Catron, Ch. J.
delivered the opinion of the court.
The first question to be considered in this case, is, whether the complainants are barred in part or in whole by the statute of limitations. This point is one in which society is greatly interested. ■ To what description of trusts attempted to be enforced in a court of equity, the statute of limitations does apply, has been a matter of frequent difficulty from the earliest history of the British court of chancery.
The subject has been considered of in modern times-by judges of great learning and ability, but in a manner too diffuse for the convenience of ordinary readers. The court will attempt to extract from the adjudicated cases the principles governing the present cause, without giving a synopsis of all the adjudications on the subject, a practice but too apt to produce confusion even in a regular treatise.
Courts of equity, equally with courts of law, are bound by the statutes of limitation, in all the varieties of bail-ments, loans, pawns, deposites, &c. although express trusts, where there are convenient remedies in cases at law, or by bill in equity. The leading cases that have settled this principle are, Leroy vs. Leroy, Prec. in Ch. 518; Street vs. Millish, 2 Atk. 610; Howender vs. Annesley, 2 Sch. and Lefroy, 607; Kane vs. Bloodgood, 7 Johns. Ch. R. 106; 20 John. R. 14, 600. At law the statute of limitations applies, and may be pleaded in every casein which the species of action brought is embraced by the words of the statute: as “case” in all its varieties. M’Ginnis vs. Jack and Cock, by this court, M. and Yerger’s Rep. 361. 7 Johns. Ch. Ca. 97, 226. 20 Johns. Rep. 576, 610. The conversion or adverse holding, is *232 to be proved, for the length of time to form the bar, when the statute applies. 7 Johns. Ch. Ca. 111.
The next class of cases subject to be barred, are such as create a trust in the defendant by implication, where the property of complainant has been obtained by defendant by fraud, or unlawful means, and defendant was once liable by bill to be compelled to surrender the property, or make compensation, but complainant did not sue within the limited time. In this class of cases there is no remedy at law; but the trust was not a matter of contract, nor did the relation of trustee, and cestui que trust in fact exist. The cause before the court would have presented an instance, had Trimble been a defendant. Campbell had transferred to him Armstrong’s warrants clothed with the trusts existing between C. and A; yet Trimble was not the express trustee of Armstrong, and could have pleaded the statute of three years to a bill filed for the land warrants issued to himself. Here was a case where no action at law would have lain, but trust and confidence, between T. and A., was wanting. Of this class are, Beckford vs. Wade, 17 Ves. 87, 98-7, and Cholmondeley vs. Clinton, 2 Merivale, 93. The latter has been recognized by this court in Hickman’s lessee vs. Gaither and Frost, (a) and it is perhaps the best considered adjudication on the subject extant.
The next enquiry is, does the present cause fall within either of the foregoing classes? To ascertain this, depends on the facts. It appears that in the' year 1799, it was covenanted between Armstrong and Campbell, that Campbell should as an attorney at law, and as an attorney in fact, attend to and transact the business of Armstrong, in reference to certain lands, granted to Armstrong and George Dougherty jointly, lying east of Cumberland Mountain in the State of Tennessee. Camp *233 bell “agreed to use Ms best endeavors to discover and ascertain said lands, and sell and dispose of the said Martin Armstrong’s part, half or moiety of the said lands to the best advantage in his power, according to his skill and opinion.” In consideration of which, Armstrong covenanted, “that the said G. W. Campbell shall have, receive and be entitled to one third part of all the said Martin Armstrong’s part, half or moiety, of all the aforesaid described lands. And the said Campbell is to have and receive one third part of the moneys or property, and of the value and consideration that may be received for such of the said lands above described, as shall be sold; and to such as may not be sold, the said Martin Armstrong hereby agrees to make and execute to the said G. W. Campbell, good and sufficient deeds of conveyance in fee simple, to the third part of the said Armstrong’s half or moiety of the same, (that is, of all the lands that shall remain unsold,) in a reasonable 'time after said lands are found out and known, and after application being made to him, or his executors, &c. by'the said G. W. Campbell or his assignees, to have the conveyances made and executed in due form, and agreeably to the quantity and quality of said lands.” It was further covenanted, that Armstrong should from time to time, give Campbell such private instructions, as it might be necessary for said Campbell to have, for the benefit of both parties, in the sale of the lands, and touching the premises. In the due performance of all which articles and agreements, the said parties, G. W. Campbell and Martin Armstrong, bound themselves each to the other in the penal sum of twenty thousand dollars.
Campbell, by this covenant was authorized to sell and dispose of the lands, according to his best skill and judgment; and one third part of the moneys or property, and of the consideration received for the lands or any part thereof, he was to retain, and the other two thirds *234 he was to pay over to Armstrong, his principal- The bill alleges, that Campbell did dispose of the lauds, and calls upon him as a trustee, to account to Armstrong’s heirs and administrator, for the two thirds of the moneys, property and consideration, he received for them-That Mr. Campbell is liable for damages at law on the covenant, is certain; and it is equally so, that he is subject to account in equity; the court, having undoubted jurisdiction, as between cestui que trust and trustee, to enforce the covenant by bringing the trustee to an account. Here are concurrent remedies, but neither at law or in equity can the act of limitations, of three years, bar a ,suit on this covenant. The main difficulty arises however, on the plea of the seven years act. After the passage of the act of 1806, authorizing warrants to issue for lost lands, Campbell conveyed the whole of Armstrong’s referred to in the covenant, to James Trim-ble for a nominal consideration, for the purpose of having the warrants raised and removed to other lands. Trimble and Campbell entered into a covenant, by which Trimble agreed to be at the trouble of raising the warrants on the Armstrong and Dougherty lands, Campbell being also agent for Dougherty’s heirs, and at half the expense of the Armstrong warrants; and when obtained, Trimble was to pay fifty cents an acre for Armstrong’s moiety to Campbell, but he was to pay Campbell one half of the warrants at 50 cents the acre; and they were to be equal partners in the warrants, to be disposed of for the best price that mightbe had, for their joint benefit. Trimble purchased on time, and paid Campbell fifty cents an acre for the moiety, 5075 acres. Two of these warrants for 1000 acres each, were assigned by Trimble to Campbell, not to change any interest the parties claimed in them, each claiming, a moiety, but for the reason, that Campbell had agreed with Anderson and Strother, (two locators,) to attend to their law business as counsel, and they were in consideration *235 thereof, to locate for him gratis, lands not exceeding 10,000 acres in the Duck and Elk river country; the warrants were located in Campbell’s name on Elk, as the joint property of Campbell and Trimble. After-wards, Campbell conveyed to Trimble his interest in a tract held jointly by them in East Tennessee, in extin-guishment of Trimble’s claims to the two tracts on Elk. Of these, Campbell took possession in 1806, under his grants, claiming them as his own, and held them up to the filing of this bill, in January 1823; and to the recovery of which, he relies on the statute of limitations of seven years, as a bar. The first chancellor who decreed in the cause below, adjudged that the statute did not apply. The cause was re-heard, and chancellor Green declared the statuté a bar to a decree for the lands, but ordered the defendant to account for the value at the time the bar was formed. The question is one of delicacy and difficulty, and of much importance to the community, though inconsiderable to the parties, if either of the decrees below were correct. A preliminary question arises, and must be disposed of before the main one can be examined, to wit, the effect of the contract of Trimble and Campbell in 1806, on the interests of Armstrong. The substance of that contract was, that Trimble and Campbell purchased Armstrong’s 10,150 acres of warrants at fifty cents an acre, in partnership, from Armstrong, through his attorney in fact, Campbell, one of the purchasers. It is insisted that the price is fair, and Mr. Campbell ought to account in accordance with this transaction. The defence is mainly rested on it. Trimble says, he thought it a hard bar-goin on his part; and so it may have been. He was to raise for Campbell, who had been employed to do it, 20,300, acres of warrants, and to receive 5075 acres at fifty cents an acre; but as to the defendant, the contract was certainly a gaining one. Be this as it may, it was avoidable one as to Armstrong; whether it was fair, ot *236 unfair, it can form no defence for Mr. Campbell. No ... . , principle governing a court oí equity, is more conciu-sively settled, than that if a trustee sells the trust estate, and is himself interested in the purchase, being a fact Imowh to the buyer and seller, the cestui que trust is entitled as of course to have the purchase set aside. Were the trustee permitted to take the trust estate at his own price, and force the cestui que trust to prove the sale unfair, therq would be temptations holden out to trustees (in the language of chancellor Kent,) poisonous in their consequences. 2 Johns. C. C. 260-61. The decisions are unifornrand too numerous to be even referred to; some of them may be seen abstracted in Dovone vs. Fanning, 2 John. C. C. 255; and Fox vs. Mackreath, 2 Bro. C. C. 400, and 8 Wheat. 442, 463.
The transfer of the lands to Trimble, and the issuance of the warrants to him, and the re-transfer of the warrants to Campbell, must be viewed by the court as mere formalities, not divesting any title Armstrong had to the warrants, or stripping them of the trust attached by Campbell’s covenant of 1799. Equity regards not the circumstance, but the substance of the act. Francis’ Maxims, 13. The warrants located in Lincoln were Armstrong’s, as much as the lands from which they had been raised were his, and the lands located, were the substitute of those from which the warrants had been removed. Mr. Campbell holds these lands in his character of trustee, without having separated the trust from the estate, acquired in his own name, unless he has had seven years adverse possession, within the meaning of the act of 1797, ch. 43, sec. 4. This raises the question, can a trustee having and holdingpossession of the trust estate for his cestui que trust, by any act of his own, without communication with the cestui que trust, so change the character of his possession, as to make it adverse to the cestui que trust, by the lapse of time, and by this means denude himself of his character of trustee, with *237 out performing tbe trust? We think not. In cases of trust created by deed or contract, by which the trustee is entitled to take and hold possession, and where the cetsui que trust has no remedy at law, the possession holden shall be deemed consistent with the duty of the trustee, and consequently consistent with the rights of the cestui que trust; and if he part with the possession to a third person, in whose favour time would operate, and regain it by purchase or descent, he shall hold it incumbered with the trust. The rule is taken from Littleton, I Inst. 242 a. “If a disseisor enfeoff his father in fee, and the father die seised of such estate, by which the lands descend to the disseisor as son and heir; in this case the disseisee may well enter upon the disseisor, notwithstanding a disseisin, for as to the disseisin, the disseisor shall be adjudged in but as a disseisor, notwithstanding the descent.” “For, says Hargrave in note 172, when the disseisor enfeoffs the father, it is presumed to be done in order afterwards to come in by descent, and the act of law shall not give sanction to the wrong of the party; nor shall any man by his own wrong, however cunningly contrived, give to himself a right; for when the heir by descent gains a jus possessions, he is supposed innocent of the wrong of his ancestor; but here he is partner of his guilt..” That is, a rightful heir, notparticeps criminis, coming in by descent cast, would hold the land, by taking away the right of entry of the disseisee and true owner. Disseisin and descent, were in early times the common bar in England; then come fine and nonclaim, in virtue of the statute of fines, 4 H. vii. ch. 14, in analogy to which, our 7 years act was passed in 1715, creating a bar, and communicating an absolute title by the lapse of time. The same rules were applied to trustees attempting to avail themselves of the statute of fines, as in cases of disseisin and descent; that no man by his own wrong should gain to himself a right. Thus in Bovey vs. Smith, 1 Ver., 60, 84, Lord King adjudg *238 ed, that trustee having sold land to a stranger, and a fine with proclamations, and five years having passed, the trus-fee afterwards, for valuable consideration really paid, purchases the land again of the vendee; yet the trustee notwithstanding the fine, proclamations, and non-claim for five years, should stand seised as at first, and as if the lands had never been sold, or any fine levied. This decree was given with the concurring opinion of the Ld. Ch. Justice North. We have carefully traced it through the reported decisions, and find the rule declared in Bovey vs. Smith, in a case such as this, to have been followed without an exception. We will content ourselves with referring to Kennedy vs. Daly, 1 Sch. and Lefroy, 376, 377, and Chalmer vs. Bradley, 1 Jacob and Walker, 66-7-8, as sufficient evidence of the recognition of the rule; there being no names of higher authority in modern times, than Lord Redesdale and Sir Thomas Plumer, who decreed in the last named causes.
Mr Campbell therefore by his conveyance to Trimble, and Trimble’s re-conveyance, did not extinguish or separate the trust from the land; but they were transferred both together. This transaction was a wrong as against Armstrong, the cestui que trusty and no act of law can give it sanction, so as to better the situation of the trustee. He comes within the letter of the authority cited from 1 Inst. and is estopped by his covenant, creating him a trustee, to claim a right grounded on his own wrong, and therefore cannot be heard to say his possession was adverse. The Lincoln lands must be divided; two thirds to Armstrong’s heirs, and one third to defendant.
Mr. Campbell by his covenant with Armstrong, bound himself for one third part of the land, to dispose of it as he judged best. He judged best to have these two warrants located without communication with Armstrong, and did it pursuant to the trust, for the consideration of one third covenanted to be given by Armstrong; nor is there apy measure of justice to make his heirs pay *239 one third to Mr. Campbell, and another third for locating the warrants. That Campbell employed Anderson and Strother to perform the duty on his behalf as agents, is true; but Armstrong’s covenant was that he should have two thirds of the proceeds of the East Tennessee lands; those two tracts are proceeds, and Arm. strong entitled by the covenant. For such portion of the lands as have been sold, two thirds of the money, with interest from the time it was received, will be accounted for. Also the parties will account for the rents and profits of the lands, and the taxes, costs and charges incident, with each other.
As to the 640 acre warrant, Mr. Campbell will answer the interrogatory, and inform the court whether it be located on land; if not, how has it been disposed of.
For the warrants drawn in 1807, except the 2000 acres located in Lincoln, Mr. Campbell will pay one dollar an acre. For the warrants drawn after 1807, including the 270 acres withdrawn from the Lincoln land, he will pay 62⅛ cents an acre; the interest to be calculated from the time it commenced in the decree below.
The decree as to the warrants in Armstrong’s name, located in the Western District, will be affirmed. Under the circumstances, Mr. Campbell acted for the best. There is no evidence that the buyers of it could not have their third of the warrants, had they applied; and if they had, the same locating fee would have been necessarily paid by them. There was no breach of trust as to these warrants, and to this part of the transaction, the most equitable rule must be applied.
The court think that compound interest cannot be allowed, save in very peculiar cases, and a majority of the court think this not one of that description. Although Mr. Campbell’s course before the bill was filed, may have been over cautious in not settling with the heirs, and exceptionable in withholding from them a true *240 statement of the matter on paper, yet, his answer has fully shown the state of the trusteeship, so far as within his knowledge; and because he has failed to keep accounts, the court cause him to be charged with the' best selling price for the warrants. Further than this, might be more than compensation.
As to the objection to the frame of the bill, we think there is nothing .in it. From any thing appearing in the cause, the heirs were entitled to all these lands and warrants; for when the transfer to Trimble is set aside, there is no evidence to show as to whom Mr. Campbell parted with the warrants. If not disposed of at Martin Armstrong’s death, they descended to his heirs, and nothing appears to the contrary.
The master will report as directed, as soon as may be.
Decree accordingly.