# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **GRACE THRU FAITH,** | ) | |
| Petitioner/Appellant, | ) | Weakley Equity No. 13194 |
| **vs.** | ) | |
| **TONY L. CALDWELL,** | ) | Appeal No. 02A01-9502-CH-00026 |
| Respondent/Appellee | ) | |
| and | ) | |
| **TONY L. CALDWELL and JOANN P. CALDWELL TRUST,** | ) | |
| Intervening Plaintiffs/Appellees | ) | |
| **vs.** | ) | |
| **EDWARD IRWIN and REBECCA IRWIN,** | ) | |
| Intervening Petitioners/Defendants/ Appellants. | ) | |

FILED

October 9, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF WEAKLEY COUNTY
AT DRESDEN, TENNESSEE

THE HONORABLE WILLIAM MICHAEL MALOAN, CHANCELLOR

For the Petitioner/Intervening
Petitioners/ Defendants/Appellants
H. Max Speight
Jeffrey W. Parham
Martin, Tennessee

For the Respondent/Intervening Plaintiffs/
Appellees
Harold T. Brundige
Martin, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

## OPINION

This is a case involving a trustee's improper accounting procedures and misuse of funds regarding a trust set up to receive Social Security Insurance payments. At issue is whether Tennessee state courts have subject matter jurisdiction to hear a dispute between a beneficiary and his representative payee over alleged misuse of Social Security benefits. The trial court found it had jurisdiction. We affirm.

Edward Irwin, an ordained minister, and his wife, Rebecca Irwin (the Irwins), are officers in a non-profit organization named Grace Thru Faith Ministries (Grace Thru Faith). In 1989, Edward Irwin (Irwin) met Tony Caldwell (Caldwell). Caldwell had been receiving Social Security benefits and Supplemental Security Income (SSI). Irwin and Caldwell ultimately agreed that Irwin would become Caldwell's representative payee, and the Social Security Administration (SSA) subsequently certified Irwin as such. As representative payee, Irwin received Caldwell's benefit payments on behalf of Caldwell and for his use.

Later, the SSA determined that Caldwell was entitled to back payments totaling approximately $40,000. Receipt of this lump-sum payment, however, would put Caldwell in danger of losing his SSI benefits. The SSA recommended ways to avoid this result, including establishing a trust for receipt of the lump-sum payment, with the trust to be administered by someone besides Caldwell. Irwin set up an irrevocable trust, with Grace Thru Faith as trustee, for the benefit of Caldwell and his wife, Joann. The Irwins and the Caldwells all moved to Weakley County, Tennessee. After the move, Irwin purchased a home, an automobile, and various furnishings and appliances for Caldwell with trust funds. These items became trust assets.

The Irwins later alleged that Caldwell sold some of the furnishings purchased with Social Security proceeds and caused or permitted damage to the residence. Irwin no longer wanted to be associated with Caldwell. He informed the SSA of his desire to be removed as representative payee for Caldwell. He made a final accounting to the SSA, which the SSA approved. Grace Thru Faith, as trustee, filed suit against Caldwell, alleging waste of trust assets. Caldwell filed a counterclaim, alleging the misappropriation of trust funds. Caldwell and his wife intervened as the Caldwell Trust and sought to make the Irwins party defendants. The Irwins intervened as party plaintiffs and claimed that Caldwell owed the Irwins personally $1,956.80.

After a bench trial, the trial court found in favor of Caldwell on all issues. The court found

that the Irwins had failed to properly document their use of trust funds and that consequently they could not account for certain funds. The court found that the Irwins and Grace Thru Faith had misused trust funds, awarded Caldwell a judgment against Grace Thru Faith and the Irwins in the amount of $5,656.50, and removed Grace Thru Faith as trustee.

Grace Thru Faith and the Irwins then filed a Motion to Alter, Amend or Vacate Judgment for Lack of Subject Matter Jurisdiction. The Irwins maintained that they had made an accounting to the SSA and that the SSA had approved of their accounting methods as well as their use of funds. They argued that federal law preempted state jurisdiction in this case and that Caldwell's only remedy was an administrative hearing and subsequent review in federal court. The trial court denied the motion, and the Irwins filed this appeal.

The only issue on appeal is that of subject matter jurisdiction. The Irwins maintain that the trial court had no jurisdiction over the accounting method prescribed by and approved by the SSA, no jurisdiction to determine whether the Irwins misused Social Security benefits, and no jurisdiction to change accounting methods after Irwin's accounting had been accepted and approved by the SSA.

The issue of whether the trial court had subject matter jurisdiction in this case is a question of law. Therefore, our review of the judgment below is *de novo* upon the record without a presumption of correctness. Tenn. R. App. P. 13(d); *see also Marriott Employees' Fed. Credit Union v. Harris*, 897 S.W.2d 723, 727 (Tenn. App. 1994).

To decide whether federal law has preempted Tennessee law or the subject matter jurisdiction of Tennessee courts, we start "with the presumption that state courts enjoy concurrent jurisdiction" with federal courts. *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 542 (Tenn. 1989). The U.S. Supreme Court has explained:

> We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule.

*Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507-08, 82 S. Ct. 519, 522-23, 7 L. Ed. 2d 483 (1962). The Court has described three circumstances in which the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, preempts state law:

> First, Congress can define explicitly the extent to which its enactments pre-empt state law. Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts'

2

task is an easy one.

Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." . . .

Finally, state law is pre-empted to the extent that it actually conflicts with federal law.

*English v. General Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65 (1990) (citations omitted) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447 (1947)). Field preemption arising from a pervasive scheme of federal regulation will not be found in a field that includes areas traditionally occupied by state law, unless there is clear and manifest congressional intent to preempt. *Id.*

This is a case of first impression in Tennessee. This Court has previously noted that "[w]here neither a direct conflict nor an expressed intent to preempt are present, the courts must judge from an examination of the respective laws or regulations whether preemption has in fact occurred." *Illinois Cent. Gulf R.R. Co. v. Tennessee Pub. Serv. Comm'n*, 736 S.W.2d 112, 114 (Tenn. App. 1987). Consequently, we must examine the relevant federal statutes and regulations concerning representative payees.

Under the Act, SSI benefits can be certified for payment to someone besides the beneficiary. 42 U.S.C. § 405(j)(1)(A) (1994). The person or organization receiving the SSI payments is called the representative payee. *Id.* If the beneficiary is dissatisfied with the decision to make payments to a representative payee or with the person chosen as representative payee, he is entitled to an administrative hearing, and to judicial review thereof in federal court. *Id.* § 405(j)(2)(E)(i) (1994). In addition, the Act requires annual accountings by a representative payee in order to help the SSA identify representative payee misuse of funds. *Id.* § 405(j)(3)(A). The SSA can also require an accounting from a representative payee at any time if it has reason to believe that the payee is misusing payments. *Id.* § 405(j)(3)(D).

If the SSA finds misuse, action may be taken:

If the Commissioner of Social Security *or a court of competent jurisdiction* determines that a representative payee has misused any individual's benefit paid to such representative payee pursuant to this subsection or section 1383(a)(2) of this title, the Commissioner of Social Security shall promptly revoke certification for payment of benefits to such representative payee pursuant to this subsection and certify payment to an alternative representative payee or, if the interest of the

3

individual under this subchapter would be served thereby, to the individual.

*Id.* § 405(j)(1)(A) (emphasis added). Further action is authorized when the misuse results from SSA negligence:

> In cases where the negligent failure of the Commissioner of Social Security to investigate or monitor a representative payee results in misuse of benefits by the representative payee, the Commissioner of Social Security shall certify for payment to the beneficiary or the beneficiary's alternative representative payee an amount equal to such misused benefits. The Commissioner of Social Security shall make a good faith effort to obtain restitution from the terminated representative payee.

*Id.* § 405(j)(5). In the absence of such negligence, any payment made under § 405(j), "if otherwise valid under this subchapter, shall be a complete settlement and satisfaction of any claim, right, or interest in and to such payment." *Id.* § 405(k). The Act also provides a criminal penalty for payee misuse of funds, making it a felony to knowingly and willfully use such funds for any purpose other than on behalf of the beneficiary. *Id.* § 408(a)(5). In addition, "the court may also require that full or partial restitution of such funds be made to the individual for whom such person or entity was the certified payee." *Id.* § 408(b).

SSA regulations reinforce the statutory guidelines. They provide that a representative payee should keep records of his use of benefit payments and is accountable for that use. 20 C.F.R. § 404.2065 (1996). If the payee does not use benefit payments on behalf of the beneficiary or does not provide a requested accounting, the SSA will select a new representative payee. *Id.* § 404.2050. In addition, the regulations provide:

> Our obligation to the beneficiary is completely discharged when we make a correct payment to a representative payee on behalf of the beneficiary. The payee in his or her personal capacity, and not SSA, may be liable if the payee misuses the beneficiary's benefits.

*Id.* § 404.2041. Finally, the regulations describe the review process for SSA decisions. *Id.* §§ 404.900-.996. Administrative review and subsequent judicial review are available for decisions which are deemed "initial determinations" by the SSA. *Id.* § 404.900(a). The regulations provide a non-exclusive list of those actions considered initial determinations. *Id.* § 404.902. The decision to make payments to a representative payee and choice of payee are initial determinations. *Id.* § 404.902(o), (q). The regulations also describe a category of agency "actions that are not initial determinations." *Id.* § 404.903. Actions that are not initial determinations may be reviewed by the SSA but are not subject to the comprehensive review process afforded initial determinations and are not subject to judicial review. *Id.* Denying an individual's request to be certified a representative

4

payee and deciding whether an organization acting as representative payee can charge the beneficiary a fee for expenses incurred in fulfilling its duties fall into this category. *Id.* § 404.903(c), (q). The regulations do not indicate that a beneficiary must go through the agency review process in order to seek restitution from a representative payee who has misappropriated the beneficiary's payments. Likewise, the regulations do not indicate that the SSA's acceptance of a final accounting from a decertified payee forecloses the beneficiary's state remedies against the payee.

Therefore, in situations in which the misuse of funds is not a result of SSA negligence, there is *no* provision in the federal statutes or regulations for a beneficiary to recover misused funds from a representative payee. While the SSA requires an accounting of a payee's use of benefit payments, the primary remedy for misuse of payments is replacement of the payee. 42 U.S.C. § 405(j)(1)(A) (1994); 20 C.F.R. § 404.2050 (1996). Reimbursement is only provided for when the SSA has been negligent in its oversight of the representative payee, not alleged here, and when the payee has been convicted in criminal court for willful misuse of beneficiary payments, which has not occurred in this case. 42 U.S.C. § 405(j)(5) (1994); *id.* § 408(b) (1994). The regulations state that the payee may be personally liable for misuse of funds, implicitly allowing for a claim by the beneficiary against the payee. 20 C.F.R. § 404.2041 (1996). The Act further provides for the revocation of a representative payee's certification when "the Commissioner of Social Security *or a court of competent jurisdiction* determines that a representative payee has misused any individual's benefit paid" to him. 42 U.S.C. § 405(j)(1)(A) (1994) (emphasis added). The language "a court of competent jurisdiction" clearly indicates that a claim of payee misuse of funds can be addressed outside the SSA's administrative procedures. Furthermore, the regulations do not list the SSA's acceptance of a representative payee's accounting as an "initial determination" subject to agency review or as an "action that is not an initial determination" that may still be subject to limited agency review. 20 C.F.R. §§ 404.902-.903 (1996). Therefore, the federal statutes and regulations allow for claims beyond those expressly provided for therein and contain no language indicating an intent to preempt state court jurisdiction. Moreover, a state claim by a beneficiary for recovery of funds misused by a payee does not conflict with the federal statutes and regulations. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65 (1990).

Cases from other jurisdictions support this conclusion. In *Jordan v. Heckler*, 744 F.2d 1397, 1399 (10th Cir. 1984), the court found that a determination regarding a payee's misuse of funds was

5

not an initial determination under the Act and did not trigger an administrative hearing and judicial review. *Jordan* noted that neither the Act nor regulations provide for a hearing on a representative payee's misuse of funds: "A claim may be the basis for a change in the representative, but this does not have any consequences as to the dollars." *Id.* The court observed:

> The only action that the agency can take if there appears to be a misapplication of funds by the payee is to "request" restitution and refer the incident to the General Accounting Office. Claims of this nature in this appeal have no relation whatever to a termination of benefits or to the dollars from the agency. *The claims could however go against the representative as an individual with state law remedies available.*

*Id.* (emphasis added). Therefore, under the reasoning in *Jordan*, Caldwell's claim against the Irwins was properly pursued in state court.

An unreported federal decision discusses the issue of jurisdiction. In *Blanchard v. Social Security Administration*, No. CV-91-1576, 1993 WL 72353 (E.D.N.Y. Mar. 1, 1993), the district court considered whether it could hear a suit against the SSA on the misuse of SSA funds paid to a representative payee who was the state-appointed conservator for a beneficiary. The court interpreted the language in 42 U.S.C. § 405(j)(1)(A) concerning "a court of competent jurisdiction" and the determination of misuse of funds by a representative payee:

> [T]hat section implicitly mandates that plaintiff exhaust her administrative remedies before seeking such a determination in federal court for only then would the court have "competent jurisdiction" to determine the issue of misuse of funds. In addition, *the statute also contemplates removal of a representative payee once a state court of competent jurisdiction determines that the individual has converted funds received on behalf of the beneficiary*. Should plaintiff wish to pursue her restitution claim, she must first file a claim of misuse of funds with the Social Security Administration and exhaust the administrative appeals process before this Court can address that issue or, *alternatively, she may petition the Supreme Court of Queens County to remove Brand as conservator of Jenkins' estate by substantiating her allegations of misuse of funds in that court*.

*Id.* at *2 (emphasis added) (footnote omitted). This interpretation of the Act supports finding concurrent jurisdiction between the state and federal courts. *See also In re Guardianship & Conservatorship of Cavin*, 333 N.W.2d 840, 841 (Iowa 1983) (noting a conservator's concurrent federal and state duties to account for Social Security benefits).

State jurisdiction over claims of payee misuse of funds was also found in *In re Kummer*, 461 N.Y.S.2d 845 (N.Y. App. Div. 1983). *Kummer* relied on an unpublished federal decision, *Bell v. Secretary of HEW*, No. 70 C 407 (E.D.N.Y. Feb. 2, 1971). *Kummer*, 461 N.Y.S.2d at 858-61. In *Bell*, the court observed that " 'neither the Act nor the regulations provide for any means by which

the Administration can recover funds misappropriated by a representative payee and reissue them to the beneficiary.' " *Kummer*, 461 N.Y.S.2d at 859 (quoting *Bell*). *Bell* noted that, even if the SSA had found that the defendant had misappropriated the plaintiff's funds, it would have had no power to compensate the plaintiff. *Id.* The court concluded that, " '[s]ince no decision made by the Secretary could have affected any of plaintiff's rights to payment of benefits, no hearing was required' " by the Act. *Id.* (quoting *Bell*). Consequently, an SSA "Special Determination" finding no payee misuse of funds was not a proper adjudication of the rights between the two parties, and the federal court set that determination aside. *Id.* at 860. In *Bell*, the court pointed out that the plaintiff beneficiary could sue the defendant representative payee in state court. *Id.* Relying on *Bell*, *Kummer* concluded that New York courts had jurisdiction over claims of payee misuse of benefit payments. *Id.* at 860-61.

In *Catlett v. Catlett*, 561 N.E.2d 948 (Ohio App. 1988), the Ohio court considered whether a representative payee could be ordered to put a lump-sum Social Security payment into a trust set up for the beneficiary, her minor daughter. The court found that questions regarding misuse of Social Security funds by a representative payee are not exclusively under federal jurisdiction. Under the Act, the SSA's primary response to the discovery of payee misuse of funds is to choose a new representative payee. *Id.* at 951. The SSA only requires accountings from a payee in order to know whether to retain him or choose a new one, not to settle disputes between payees and beneficiaries. *Id.* at 951-53. *Catlett* also noted that the Act provides administrative action for the two types of SSA decisions discussed above, "initial determinations" and "actions that are not initial determinations." *Id.* at 951. The court concluded:

> We find that the case at bar involves an issue, *i.e.*, the representative payee's expenditure of benefits, which is neither an initial determination nor a determination which is not an initial determination as defined by the federal regulations. Jurisdiction over this particular issue has not been exclusively granted to the federal courts by express provision. In addition, the nature of this particular question is such that the SSA no longer has any interest in the funds after they have been properly paid to the appropriate representative payee.

*Id.* at 953. Thus, the court decided that the state had jurisdiction over actions alleging payee misappropriation of SSA funds. *Id.*

Consequently, a number of cases appear to support a finding of no preemption. However, there are cases to the contrary. *Brevard v. Brevard*, 328 S.E.2d 789 (N.C. App. 1985), found that state courts have no jurisdiction over a representative payee's misuse of funds. It noted that, "[i]n

7

general, Social Security benefits are neither assignable nor subject to legal process." *Id.* at 791. The court went on to state that, "[i]n enacting Title 42, Chapter 7, Congress provided that the use or misuse of federal Social Security benefits would be a federal matter, entrusted primarily to the SSA." *Id.* at 792. The court concluded:

> The courts of North Carolina, however, do not possess the power to compel the SSA to transfer the children's benefits to someone other than the designated payee, ***nor do they have the power to determine that defendant is misusing Social Security benefits paid to him on behalf of the children and to direct that he account for them to some other person***.

*Id.* (emphasis added). The *Brevard* court speculated that the plaintiff might have an administrative remedy through the SSA or that the SSA might invoke 18 U.S.C. § 641, a criminal statute directed against stealing public money, property, or records. *Id*; *see also C.G.A. v. State*, 824 P.2d 1364, 1367 (Alaska 1992) (finding that the existence of a federal remedy preempts state jurisdiction).

However, as discussed above, the SSA does ***not*** provide a means by which a beneficiary may recover misappropriated funds from a representative payee, in the absence of negligence by the SSA. Consequently, a finding of preemption would result in no available remedy for a beneficiary who has been the victim of misuse of funds by a representative payee.

The Social Security Act and the regulations promulgated pursuant to it neither explicitly nor implicitly preempt state jurisdiction over this issue. Tennessee courts have "undoubted jurisdiction" over disputes between the legatee and the trustee of an express trust, such as Grace Thru Faith. *Armstrong's Heirs v. Campbell*, 11 Tenn. (3 Yer.) 201, 234 (1832). Accordingly, if a representative payee misuses or misappropriates SSI benefits paid to him on behalf and for the use of the beneficiary, Tennessee courts have jurisdiction to examine the payee's accounting, determine if any abuse has occurred, and order the appropriate remedy.[1] Therefore, the trial court had subject matter jurisdiction in this case.

The decision of the trial court is affirmed. Costs are assessed against Appellants, for which execution may issue if necessary.

_____
**HOLLY KIRBY LILLARD, J.**

_____

**CONCUR:**

_____

_____

[1]Only the SSA, however, has the authority to decertify a representative payee.

**ALAN E. HIGHERS, J.**

_____

**DAVID R. FARMER, J.**