HARRY JAMES O'CONNOR, JR., Plaintiff-Appellant v. KARA J. ZELINSKE, Defendant-Appellee

No. COA08-280

(Filed 18 November 2008)

## 1. Child Support, Custody, and Visitation— sole physical custody—relocation to another state—best interests of child

The trial court did not abuse its discretion in a child custody case by entering an order granting defendant mother sole physical custody of the children and permitting her to relocate to Minnesota subject to plaintiff father having visitation privileges, allegedly without proper consideration of the best interests of the children and the effect the relocation would have on the children, because the trial court found: (1) plaintiff attempted to impugn defendant's reputation to the children; (2) examples of communications between plaintiff and the children contained inappropriate references or insinuations that were not in the best interest of the children; (3) plaintiff needed help from the local sheriff's department to give medication to the children during their visit with him; (4) plaintiff was asked to leave a voluntary domestic violence program based on his lack of participation; (5) plaintiff used Social Security payments disbursed for the care of the children to make house and utility payments, to pay other personal expenses, and to hire at least three private investigators to follow defendant; (6) there had been physical and emotional abuse of defendant by plaintiff, and defendant continued to fear plaintiff; and (7) defendant's mother was available to assist in supporting the children if defendant and the children moved back to Minnesota, defendant had many friends and relatives in the area, defendant's mother had sufficient space in her house to keep defendant and the children, and defendant had a job lined up in Minnesota.

**2. Child Support, Custody, and Visitation— custody—visitation schedule—option to relocate to another state—sufficiency of findings of fact**

The trial court did not abuse its discretion in a child custody case by entering an order establishing a visitation schedule and permitting defendant mother the option to relocate to Minnesota because there were sufficient findings of fact supporting a conclusion that the advantages to the children outweigh the disadvantages, and that relocation to Minnesota with defendant, who will be employed, living in a stable environment, and having a broad network of family and friends to assist her in caring for the children, would be in the best interests of the children.

**3. Child Support, Custody, and Visitation— visitation schedule—reasonableness**

The trial court did not err in a child custody case by setting a visitation schedule even though plaintiff father contends alternating weekends from Thursday to Sunday evenings within a one hundred mile radius of the children's home was unreasonable given the fact that plaintiff lives in North Carolina and the children would potentially be living in Minnesota because: (1) the trial court determined the children's potential relocation would be in their best interests, and thus the imposition on plaintiff did not constitute an abuse of the trial court's discretion in making its custody determinations; (2) the trial court is required to subordinate plaintiff's visitation privileges to the best interests of the children; and (3) plaintiff's unemployment resulting from his disability lessened any scheduling conflicts that might interfere with his ability to exercise his biweekly visitation rights.

**4. Child Support, Custody, and Visitation— custody—transfer of past Social Security payments for benefit of children to custodial parent**

The trial court erred in a child custody case by ordering plaintiff father to transfer to defendant mother, for the children's care, past Social Security payments made to him on behalf of the children because: (1) *Brevard v. Brevard*, 74 N.C. App. 484 (1985), held that North Carolina courts do not have the authority to order the Social Security Administration (SSA) to make payments to anyone other than the designated beneficiary of the payments unless that beneficiary is subject to an alimony or child support order; (2) even if plaintiff had been a beneficiary, he had not been subjected to a child support order and the district court had not

acquired jurisdiction over the SSA by making it a party to the action; and (3) although the Court of Appeals has subsequently issued at least two opinions concerning a designated payee's right to and control over SSA benefits intended for minor children that may be in conflict with *Brevard*, the Court of Appeals is without authority to overturn a prior precedent set by another panel of the same court.

Chief Judge MARTIN concurring in separate opinion.

Appeal by Plaintiff from order entered 3 August 2007 by Judge Robert W. Bryant, Jr. in District Court, Lee County. Heard in the Court of Appeals 6 October 2008.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for Plaintiff-Appellant.*

*Harrington, Gilleland & Winstead, LLP, by Susan M. Feindel, for Defendant-Appellee.*

McGEE, Judge.

Harry James O'Connor, Jr. (Plaintiff) and Kara J. Zelinske (Defendant) are the biological parents of three minor children (the children). Plaintiff and Defendant first met in an on-line computer chat room in 2001. At that time, Plaintiff lived in North Carolina, and Defendant lived in Minnesota. Defendant visited Plaintiff in North Carolina for several weeks in 2002. Defendant returned to Minnesota, and approximately one month after that visit, Defendant called Plaintiff to inform him that she was pregnant. Defendant gave birth on 12 December 2002 in Minnesota to two children (the twins). Defendant and the twins continued to live in Minnesota, and Plaintiff continued to live in North Carolina, until 5 May 2004, when Defendant moved with the twins to North Carolina to live with Plaintiff. A third child was born on 12 March 2005. The relationship between Plaintiff and Defendant was turbulent, and Defendant moved back to Minnesota with the children in January of 2006. Defendant and the children moved back to North Carolina to live with Plaintiff in March of 2006. Following an altercation between Plaintiff and Defendant on 29 August 2006, Defendant again moved out of Plaintiff's residence with the children. Defendant and the children have continued to live separate from Plaintiff since that time.

Plaintiff filed this child custody action on 31 August 2006, requesting a temporary order preventing Defendant from leaving

North Carolina with the children, and seeking both temporary and permanent custody of the children. A temporary custody order was entered on 31 August 2006, preventing Defendant from leaving the State of North Carolina pending resolution of the underlying custody issues. At a date not shown in the record, but prior to the birth of the third child, a custody order was entered in Minnesota granting sole custody of the twins to Defendant, and denying any visitation to Plaintiff. Plaintiff filed an amended complaint in the present action on 8 September 2006, in which he requested that the District Court "contact the State of Minnesota to determine if it [would] release jurisdiction over the [twins][.]" Defendant filed her answer and counterclaim on 12 October 2006, in which she sought permanent custody of the youngest child, denial of the relief sought by Plaintiff in his amended complaint, and requested "the lump sum Social Security [d]isability settlement for the . . . children [awarded due to Plaintiff's disability] be transferred to . . . Defendant for the use and benefit of the . . . children." The trial court entered an order on 26 October 2006, finding that Minnesota had determined it no longer had exclusive continuing jurisdiction over the matter, and that District Court, Lee County had jurisdiction to consider modification of the prior Minnesota child custody order. The action was heard by the trial court on 22 March 2007, 2-3 May 2007, and 31 May 2007. The trial court entered its order on 3 August 2007, ordering, *inter alia*:

1. That Defendant shall have the sole care, custody and control of the [youngest child].

2. That Defendant shall retain sole custody of [the twins], but the previous order of the Minnesota court is modified to provide Plaintiff with visitation privileges[.]

. . . .

21. Neither [Plaintiff nor Defendant] is prohibited from moving to another state or location within the state.

. . . .

24. Plaintiff shall deliver to Defendant the sum of $9,326.00 immediately from the Social Security [d]isability funds Plaintiff received on behalf of the . . . children.

Plaintiff appeals.

## I.

[1] In Plaintiff's first argument, he contends the trial court erred in entering an order granting Defendant sole physical custody of the children, and permitting Defendant to relocate to Minnesota without proper consideration of the best interests of the children, and the effect the relocation would have on the children. We disagree.

> Under our standard of review in custody proceedings, "the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." Whether those findings of fact support the trial court's conclusions of law is reviewable *de novo*.

*Mason v. Dwinnell*, 190 N.C. App. 209, 221, 660 S.E.2d 58, 66 (2008) (citations omitted) (emphasis added). The trial court's custody decisions must be based upon the best interests of the children. The custody order shall include sufficient findings of fact to support its conclusions of law concerning the best custody placement for the children. Broad discretion is given to the trial court in its fact-finding duties and in making ultimate custody determinations. This Court will not disturb a trial court's findings absent a clear showing that the trial court abused its discretion. *Dixon v. Dixon*, 67 N.C. App. 73, 76-77, 312 S.E.2d 669, 671-72 (1984). Because Plaintiff fails to argue that the trial court's findings of fact are not supported by sufficient evidence, any such argument is deemed abandoned, and the trial court's findings of fact are binding on appeal. *Estroff v. Chatterjee*, 190 N.C. App. 61, 71-72, 660 S.E.2d 73, 79 (2008).

Plaintiff argues that the trial court failed to include sufficient findings of fact in its order to support its conclusion that the best interests of the children would be served by awarding custody to Defendant.

The trial court made the following extensive findings of fact relevant to this issue: Plaintiff suffered a work-related injury that required two operations, and Plaintiff still suffers neck pain and was prescribed thirty milligrams of Methadone four times per day, along with Motrin, Tylenol, and blood pressure medication. During a May 2002 trip to Minnesota to visit Defendant, Plaintiff consumed alcohol excessively and was verbally abusive to Defendant's roommate to such a degree that the roommate refused to allow Plaintiff to remain in the apartment she and Defendant shared. Defendant obtained a restraining order against Plaintiff from a Minnesota court, which

Defendant subsequently voluntarily dismissed just before she and Plaintiff began co-habitation in Wilmington, North Carolina.

The trial court further found that Plaintiff filed a domestic violence protective order against his then girlfriend, Andrea Batchelor (Ms. Batchelor), in New Hanover County on 9 December 2002, which was later dismissed. Ms. Batchelor filed a domestic violence protective order against Plaintiff on that same day. The trial court found that Plaintiff had "put Batchelor in a headlock, slammed her against a door, threatened to kill her, and would not let her leave[,]" and granted the protective order for one year. The trial court found that Plaintiff was unable to work due to his work-related injuries, and he borrowed money from his parents to cover his bills. Nonetheless, Plaintiff fell seven months behind on his house payments and was forced to sell his house. Since Defendant moved to North Carolina to be with Plaintiff in May of 2004, Defendant has maintained steady employment, other than the few weeks she took off following the birth of their third child.

Defendant was the primary caregiver for the children when she and Plaintiff lived together. Plaintiff's various pain medications, which cause drowsiness, limit his ability to care for the children on a regular basis. Plaintiff and Defendant argued in January of 2006, and Plaintiff pulled Defendant's hair while she was holding their infant daughter, causing Defendant to fall against the wall and to the floor. Following this incident, Defendant took the children back to Minnesota, where she and the children lived with Defendant's mother. Defendant obtained another restraining order against Plaintiff in Minnesota. However, Defendant subsequently dismissed the Minnesota restraining order and moved back to North Carolina with the children to live with Plaintiff. Plaintiff and Defendant argued again on 29 August 2006, and when Defendant threatened to call the police, Plaintiff pushed her into a wall. Defendant's mother called the house during the argument; Plaintiff lifted the receiver and replaced it, terminating the call, and then unplugged the phone. Defendant's mother called the police. Defendant, with the assistance of law enforcement, took the children and a few belongings and left the home.

The trial court found that Defendant was granted another restraining order against Plaintiff on 31 August 2006, which gave Defendant temporary custody of the children, and ordered Plaintiff not to contact the children. There was a hearing on 6 September 2006, and by order entered 7 September 2006, the trial court continued the

31 August 2006 protective order until 15 December 2006. This order also modified the original protective order, granting Plaintiff visitation with the children.

The trial court found that Plaintiff attempted to impugn Defendant's reputation to the children by telling them she had been in bed with two men. Plaintiff also attempted to use the children to determine who visited Defendant's home. Plaintiff further told the children that they "really do not have a routine." He "[a]sked if [one of the children] was being lectured." He "[a]ccused Defendant of interfering with Plaintiff's phone calls by pushing buttons." He "[a]sked one of the children if Defendant [had] a new guy that week." He told the children "that it is too bad that Defendant cannot afford her own place and has to mooch off of someone else."

The trial court concluded that "these . . . examples of communication between Plaintiff and the . . . children contain inappropriate references or insinuations that are not in the best interest of the . . . children." Plaintiff "appeared not to know which child to whom to give medicine during his visit and enlisted the help of the Lee County Sheriff's Department" to determine which child needed the medication. Plaintiff was asked to leave a domestic violence program he had voluntarily agreed to undergo because of his lack of participation.

The trial court further found that Plaintiff used Social Security payments disbursed for the care of the children to make house and utility payments, to pay other personal expenses, and to hire at least three private investigators to follow Defendant. Plaintiff withdrew $18,643.54 of these funds on 1 September 2006 and had them converted to a cashier's check. Plaintiff "degraded Defendant" to the children's daycare provider, Ms. Honeycutt, in front of the children. While Plaintiff was talking to Ms. Honeycutt, she noticed Plaintiff's hands shaking, and that he was sweating "profusely[.]" Ms. Honeycutt also noted that she had previously noticed the smell of alcohol on Plaintiff. Ms. Honeycutt indicated that "Defendant had appropriate conversations with [her] about the children and never made derogatory comments to [her] about Plaintiff." Ms. Honeycutt stated that the daycare center wished to terminate Plaintiff's visitation rights, as they were disruptive. The trial court terminated Plaintiff's visitation rights to the daycare, excepting special events.

The trial court found that when Defendant went with a friend to Plaintiff's house to try to obtain the children's birth certificates, which Defendant needed to apply for housing assistance, Plaintiff had

O'CONNOR v. ZELINSKE

[193 N.C. App. 683 (2008)]

Defendant arrested for criminal domestic trespass. These charges were subsequently dismissed. Plaintiff refused to allow Defendant to retrieve her furnishings or the children's toys from Plaintiff's house, many of which were items Defendant had brought with her from Minnesota. Plaintiff has consumed alcohol after taking his Methadone, which increases the effects of the Methadone. There has been physical and emotional abuse of Defendant by Plaintiff, and Defendant continues to fear Plaintiff. The children are more closely bonded to Defendant. Neither Plaintiff nor Defendant has a support system in North Carolina. Plaintiff's sister believed Defendant to be fearful of Plaintiff, and she observed Defendant running into the kitchen to cry after arguments. Plaintiff told Defendant's mother that if Defendant took the children to Minnesota, they "would not reach the border." Defendant's mother is available to assist in supporting the children if Defendant and the children move back to Minnesota, and Defendant also has many friends and relatives in the area. Defendant's mother has sufficient space in her house to keep Defendant and the children, and Defendant has a job lined up in Minnesota.

We hold that these findings of fact are sufficient to support the trial court's conclusion of law that "it is in the best interest of the minor children that Defendant be granted their sole care, custody and control subject to Plaintiff having visitation privileges as hereinafter set forth." We find no abuse of discretion on this issue.

[2] Plaintiff next argues that the trial court erred in entering its order establishing a visitation schedule, and in permitting Defendant the option to relocate to Minnesota.

> "[T]he court's primary concern is the furtherance of the welfare and best interests of the child and its placement in the home environment that will be most conducive to the full development of its physical, mental and moral faculties. All other factors, including visitorial rights of the other applicant, will be deferred or subordinated to these considerations, and if the child's welfare and best interests will be better promoted by granting permission to remove the child from the State, the court should not hesitate to do so."

*Evans v. Evans*, 138 N.C. App. 135, 141, 530 S.E.2d 576, 580 (2000), quoting *Griffith v. Griffith*, 240 N.C. 271, 275, 81 S.E.2d 918, 921 (1954). "The trial court must make a comparison between the two applicants considering all factors that indicate which of the two is

'best-fitted to give the child the home-life, care, and supervision that will be most conducive to its well-being.' " *Evans*, 138 N.C. App. at 142, 530 S.E.2d at 580, quoting *Griffith*, 240 N.C. at 275, 81 S.E.2d at 921; *see also In re Custody of Stancil*, 10 N.C. App. 545, 548-50, 179 S.E.2d 844, 847-48 (1971). "Although most relocations will present both advantages and disadvantages for the child, when the disadvantages are outweighed by the advantages, as determined and weighed by the trial court, the trial court is well within its discretion to permit the relocation." *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 80, 418 S.E.2d 675, 680 (1992), *overruled on other grounds by Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998).

In light of the trial court's findings of fact stated above, we hold the trial court did not abuse its discretion in allowing Defendant the option to relocate to Minnesota. We find sufficient findings of fact to support a conclusion that the advantages to the children outweigh the disadvantages, and that relocation to Minnesota with Defendant, who will be employed, living in a stable environment, and have a broad network of family and friends to assist her in caring for the children, would be in the best interests of the children. *See Evans v. Evans*, 169 N.C. App. 358, 362-63, 610 S.E.2d 264, 268-69 (2005).

[3] Plaintiff next argues that the trial court's visitation schedule is unreasonable. " 'The right of visitation is an important, natural and legal right, although it is not an absolute right, but is one which must yield to the good of the child.' " *Stancil*, 10 N.C. App. at 550, 179 S.E.2d at 848 (quoting 2 Nelson, *Divorce and Annulment*, § 15.26 (2d Ed. Rev. 1961)). Plaintiff argues that the visitation schedule, whereby Plaintiff may exercise his visitation on alternating weekends from Thursday to Sunday evenings, within a one hundred mile radius of the children's home, is unreasonable. We note that the one hundred mile radius limitation does not apply when Plaintiff has holiday visitation rights.

Should Defendant relocate to Minnesota, the distance between North Carolina and Minnesota would certainly create a hardship on Plaintiff in making his visits. However, because the trial court has determined the children's potential relocation to Minnesota with Defendant would be in their best interests, we hold that this imposition on Plaintiff does not constitute an abuse of the trial court's discretion in making its custody determinations. The trial court is required to subordinate Plaintiff's visitation privileges to the best interests of the children. *Stancil*, 10 N.C. App. at 550, 179 S.E.2d at 848. We note that Plaintiff's unemployment resulting from his disabil-

ity lessens any scheduling conflicts that might interfere with his ability to exercise his bi-weekly visitation rights. Plaintiff's arguments are without merit.

## II.

**[4]** In Plaintiff's second argument, he contends that the trial court erred in ordering Plaintiff to transfer to Defendant, for the children's care, past Social Security payments made to him on behalf of the children. We agree.

Our Court addressed this issue in *Brevard v. Brevard*, 74 N.C. App. 484, 328 S.E.2d 789 (1985). In *Brevard*, this Court held that North Carolina courts do not have the authority to order the Social Security Administration (SSA) to make payments to anyone other than the designated beneficiary of the payments, unless *that beneficiary* is subject to an alimony or child support order. The *Brevard* Court reasoned that because the Social Security payments at issue were for the benefit of the children, and the defendant was merely their designated representative, the alimony and child support exceptions could not apply. *Id.* at 487-88, 328 S.E.2d at 791-92.

> The courts of North Carolina, however, do not possess the power to compel the SSA to transfer the children's benefits to someone other than the designated payee, nor do they have the power to determine that [the] defendant is misusing Social Security benefits paid to him on behalf of the children and to direct that he account for them to some other person.

*Id.* at 488-89, 328 S.E.2d at 792. The *Brevard* Court further explained that its holding applied to funds that have already been disbursed by the SSA. *Id.* at 488, 328 S.E.2d at 792.

In addition, the *Brevard* Court noted two other issues concerning the trial court's authority in the matter: "(1) at that point, even if he had been the beneficiary, the defendant had not been subjected to a child support order, and so 42 U.S.C. § 659 had not come into play, and (2) the district court had not acquired jurisdiction over the SSA by making it a party to the action." *Id.* In light of the holding in *Brevard*, we are compelled to vacate that portion of the trial court's order requiring Plaintiff to transfer the Social Security benefits he received as designated representative for the children.

We note that following the *Brevard* decision, this Court has issued at least two opinions concerning a designated payee's right to

O'CONNOR v. ZELINSKE

[193 N.C. App. 683 (2008)]

and control over SSA benefits intended for minor children that may be in conflict with the *Brevard* opinion.

First, in *Sain v. Sain*, 134 N.C. App. 460, 517 S.E.2d 921 (1999), this Court ordered the trial court to "direct payment of the $421.00 [social security] disability check to [the] [p]laintiff, the custodial parent." *Id.* at 467, 517 S.E.2d at 927. These disability payments were being made for the benefit of the children through the defendant-father, as representative payee, due to the defendant's disability. These facts are nearly identical to those in the case now before us. *Sain* does not mention any issue of jurisdiction, the federal Social Security statutes, or the *Brevard* opinion. It seems apparent these issues were not brought to the *Sain* Court's attention on appeal. However, the *Sain* opinion does appear to direct the trial court to act in opposition to the earlier holding of *Brevard*. To the extent that the *Sain* opinion may be read as overruling any aspect of the *Brevard* opinion, it must be disregarded. *Wells v. Cumberland County Hosp. System, Inc.*, 181 N.C. App. 590, 592-93, 640 S.E.2d 400, 402-03 (2007); *see also In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (One panel of the Court of Appeals may not overrule another panel of the Court of Appeals.).

Second, this Court has directed the Department of Social Services, as representative payee, to spend SSA funds for a minor child in a specific manner. *In re J.G.*, 186 N.C. App. 496, 652 S.E.2d 266 (2007), *discretionary review denied*, 362 N.C. 176, 658 S.E.2d 485 (2008). The *J.G.* Court distinguished its opinion from *Brevard*, mainly by concluding that 42 U.S.C. § 407(a), upon which *Brevard* is based, was not applicable on the facts in *J.G.* The *J.G.* Court was very thorough in its analysis distinguishing the issue it faced from *Brevard* on the facts.[1] However, to the extent, if any, that the holding in *J.G.* is in contravention to the holding in *Brevard*, we again must follow the earlier precedent set in *Brevard*. *Cumberland County Hosp. System, Inc.*, 181 N.C. App. at 592-93, 640 S.E.2d at 402-03.

It is apparent to this Court that the holding in *Brevard* has found disfavor from subsequent panels of the Court of Appeals. A substantial number of other jurisdictions have determined that state courts have concurrent subject matter jurisdiction to make decisions concerning SSA benefits such as those at issue in the this case, *see Grace*

---

1. "The case *sub judice* is distinguishable as the action was brought by the guardian *ad litem* and not a claimant to the Social Security benefits. Therefore, the trial court here, unlike the court in *Brevard*, did not violate section 407(a)." *In re J.G.*, 186 —— N.C. App. at 506 —— n.4, 652 S.E.2d at 273 n.4.

*Thru Faith v. Caldwell*, 944 S.W.2d 607 (1997), and cases cited within. *Caldwell* specifically references *Brevard*, and it finds the reasoning in *Brevard* unconvincing. *Id.* at 612-13. The *In re J.G.* Court also references the conflict between the *Brevard* decision and other jurisdictions. *In re J.G.*, 186 N.C. App. at 506, 652 S.E.2d at 272-75.

Though we may find the reasoning set forth in *J.G.*, *Caldwell*, and other opinions questioning the holding in *Brevard* convincing, it is not within our authority to overturn a precedent set by this Court, which is the sole province of our Supreme Court.

Affirmed in part, vacated in part.

Judge STEPHENS concurs.

Chief Judge MARTIN concurs with a separate opinion.

MARTIN, Chief Judge, concurring.

I fully concur in the majority opinion and write separately only to emphasize that our decision should not be read as being inconsistent with the holding of *Sain v. Sain*, 134 N.C. App. 460, 517 S.E.2d 921 (1999), i.e. that the trial court properly refused to consider a disability payment received on behalf of a minor child as income to the non-custodial parent in determining that parent's child support obligation. To the extent the Court directed, on remand, the trial court to direct that the disability payment be made to the custodial parent, such direction was not necessary to a determination of the issue before the Court, was *dicta*, and is not binding on the specific issue addressed in Section II of the majority opinion in the present case.