DONNA ELLEN SAIN, Plaintiff v. JAMES PHILLIP SAIN, Defendant

No. COA98-1024

(Filed 3 August 1999)

**1. Child Support, Custody, and Visitation— no changed circumstances—modification improper**

Having concluded that no changed circumstances justified modification of the prior custody order, the trial court erred in modifying the terms of the custody order by requiring plaintiff-mother to give defendant-father decision-making authority as to their child's schooling, extracurricular activities, and travel.

**2. Child Support, Custody, and Visitation— deviation from Guidelines—sufficient findings of fact necessary**

Although the trial court appears to have determined that deviation from the Child Support Guidelines is appropriate due to defendant-father's disability, the trial court erred by modifying child support without making sufficient findings of fact to determine: the appropriate amount under the Guidelines, the child's reasonable needs, and that application of the presumptive Guidelines amount would be "unjust or inappropriate."

**3. Child Support, Custody, and Visitation— disability check— not income**

The trial court properly refused to consider defendant-father's disability check he received on behalf of his child as his income in figuring his support obligation.

**4. Child Support, Custody, and Visitation— disability check— parent with primary custody—may support deviation from Guidelines**

The trial court erred in failing to direct payment of defendant-father's disability check he received on behalf of his child to plaintiff-mother because she is the custodial parent. However, the receipt of these funds by the custodial parent may support a deviation from the Guidelines' presumptive support amount to be paid by the non-custodial parent on the ground that the child is receiving funds as a result of the obligor's disability.

SAIN v. SAIN

[134 N.C. App. 460 (1999)]

Appeal by plaintiff from order filed 1 April 1998 by Judge Gregory R. Hayes in Catawba County District Court. Heard in the Court of Appeals 8 June 1999.

*Daniel R. Greene, Jr., for plaintiff-appellant.*

*H. Kent Crowe, P.A., by H. Kent Crowe, for defendant-appellee.*

GREENE, Judge.

Donna Ellen Sain (Plaintiff) appeals from the trial court's child custody and support order.

On 18 June 1992, the trial court entered an order awarding Plaintiff and her ex-husband James Phillip Sain (Defendant) joint custody of their minor child (Melissa). The order set Defendant's child support obligation, provided that Plaintiff would have primary custody of Melissa, and provided that Defendant would have physical custody of Melissa every other weekend during the school year and at additional times during vacations and holidays. At that time, Defendant's gross monthly income was $1,720.00, and Plaintiff's gross monthly income was $726.00.

On 12 June 1997, Plaintiff filed a motion in the cause seeking modification of the custody and support order. In her motion, Plaintiff sought sole custody of Melissa, limitation of Defendant's visitation privileges, and "adequate" child support. Defendant filed a motion in the cause on 20 August 1997 seeking a reduction in his child support obligation because he was no longer able to work due to a disability, his income had decreased to disability payments of $800.00 per month and "$412.00 per month on behalf of the minor child as income,"[1] and Plaintiff's income had increased.

In February 1998, the trial court heard testimony from both parties, ten-year-old Melissa, several counselors, Carol Blevins (Blevins) and Sandra Robbins (Robbins) of the Department of Social Services (DSS), and various other individuals. Melissa's school counselor, who never noticed any unusual bruises on Melissa, testified that Melissa would "say that her mother told her she needed to come and see me" concerning allegations of abuse and neglect by Defendant. Blevins testified that she had investigated the allegations on behalf of DSS and that Melissa "could not give me any clear details" to support the

---

1. Defendant's disability check received on behalf of Melissa had increased to $421.00 per month by the date of the February 1998 hearing on the parties' motions.

allegations. Melissa was "very inconsistent" in her statements and would not maintain "good eye contact" during the interviews. Blevins further testified that "[n]o injuries ha[d] ever been observed by DSS." Robbins had substantiated one report of neglect for DSS. Robbins testified she "couldn't get a clear understanding from either [Defendant or Melissa]" as to the circumstances supporting the allegation, and that she found Melissa to be very bright and manipulative. Robbins stated that Melissa had apparently "hit [Defendant] with a belt" during an argument, and Defendant acknowledged to Robbins that, in response to this behavior, he had "grabbed [Melissa] and held her." Robbins testified that although she did not consider this to be appropriate discipline, "some psychologists . . . will actually give that as an option to a parent."

Based on the evidence presented, the trial court found that Melissa is "strong-willed," has become "the tail wagging the dog," and that some of her testimony was "hard to believe." The trial court made several findings to the effect that Plaintiff had repeatedly attempted to manipulate Melissa in order to remove Defendant from their lives. In addition, the trial court found that Plaintiff had instigated, through her daughter, seven separate DSS investigations of Defendant for abuse and neglect. The trial court found that Melissa had given DSS "inconsistent statements and answers . . . as to what had happened and how it happened . . . [and] fluctuated in her answers, and . . . had no good eye contact [with the DSS investigator]." DSS closed all but one of these investigations without substantiating either abuse or neglect. As to the one investigation substantiating neglect based on Robbins' report, the trial court found the neglect to be a "technical" violation, that it may have been an "accidental" occurrence, and that the DSS recommendation was only for counseling to "try[] to prevent future reports [and to] get[] everyone to get along." The parties and Melissa underwent counseling pursuant to the DSS recommendation.

Based on these findings, the trial court concluded "[t]here has *not* been a material and substantial change of circumstance justifying a modification of the joint custody arrangement in this matter, other than as stated hereinbelow." (emphasis added). Nothing stated "hereinbelow" in the trial court's conclusions of law relates to custody modification. The trial court then ordered the following modification:

Defendant will consult with [Plaintiff], but the final decisions in these particular areas involving the minor child rests with [Defendant]:

(A) Where the child is to go to school;

(B) Extracurricular activities that the child will participate in; and

(C) Any out of state travel in which the minor child will participate.

Consultation shall take into account [Plaintiff's] interest, [Melissa's] interest and the best interests of [Melissa].

As to each party's motions for a modification in Defendant's child support obligations, the trial court found:

(12) [Plaintiff] had $13,000.00 income for 10 months, then worked at a conference center making $4,000.00 during the summer of 1997. The child care is about $50.00 per week during the summertime. . . .

. . . .

(14) [Defendant] is now totally disabled, with disability income of $799.00 per month. As a result of his total disability, he received checks for $412.00 per month on behalf of [Melissa]. He was declared permanently disabled in February, 1997. He ceased full-time employment in 1994, when the company was sold. He has not worked part-time, and had no income from August, 1994, until February of 1997.

. . . In or about November of 1995, [Plaintiff] began getting the Social Security Administration to re-route the checks for Melissa on the part of [Defendant's] social security disability of $412.00 per month directly to her. Worksheet B should be the appropriate calculation of child support in this matter. However, calculations being made on Worksheet B results [sic] in what was <u>supposed</u> to be joint custody. The income of [Defendant] each month at this time does put him in the poverty level. The parties have income of $17,000.00 annually for [Plaintiff], and $9,600.00 annually for [Defendant]. The Court determines that the social security checks which [Plaintiff] had re-routed from the Social Security Administration to her, being paid on behalf of the minor child of now [$421.00] per month, should be re-routed back to [Defendant] to help him make the child support payments.

There is no Worksheet B attached to the trial court's order or included in the record on appeal.

Based on these findings, the trial court concluded "[t]here has been a material and substantial change of circumstance justifying a modification of the child support ordered in this matter." Accordingly, the trial court directed that Defendant should receive the $421.00 disability check (paid "on behalf of" Melissa), and reduced Defendant's child support obligation to $95.00 per month.

---

The issues are whether: (I) there was a substantial change in circumstances since entry of the prior custody order justifying its modification; (II) the trial court's findings justify deviation from the North Carolina Child Support Guidelines (Guidelines); and (III) disability checks received for the benefit of a child may warrant deviation from the Guidelines.

I

Plaintiff contends the evidence of neglect and abuse required the trial court to conclude changed circumstances existed affecting Melissa's welfare. We disagree.

The trial court "is vested with broad discretion in cases involving child custody." *Pulliam v. Smith*, 348 N.C. 616, 624, 501 S.E.2d 898, 902 (1998). The trial court "has the opportunity to see the parties in person and to hear the witnesses," *Falls v. Falls*, 52 N.C. App. 203, 209, 278 S.E.2d 546, 551, *disc. review denied*, 304 N.C. 390, 285 S.E.2d 831 (1981), and its findings "turn in large part on the credibility of the witnesses," *Brandon v. Brandon*, 132 N.C. App. 646, 652, 513 S.E.2d 589, —— (1999). Accordingly, where the trial court's findings of fact are supported by competent evidence, they are binding on appeal. *Harris v. Harris*, 51 N.C. App. 103, 105, 275 S.E.2d 273, 275, *disc. review denied*, 303 N.C. 180, 280 S.E.2d 452 (1981). The trial court's findings must, in turn, support its conclusions of law. *Blanton v. Blanton*, 40 N.C. App. 221, 225, 252 S.E.2d 530, 533 (1979).

In this case, the trial court heard both parties and Melissa testify as to the allegations of abuse and neglect. In addition, the trial court heard testimony that Plaintiff urged Melissa to tell her school counselor that she was abused and neglected by Defendant, and that DSS got "inconsistent statements" and poor eye contact from Melissa when interviewing her concerning these allegations. As to the one substantiated allegation of neglect, Robbins testified that she did not get a "clear understanding" of what had occurred, and that, although she did not personally believe grabbing and holding a child was an appropriate disciplinary measure, some psychologists did. This com-

petent evidence supports the trial court's findings that Plaintiff was manipulating Melissa; that six of the seven allegations of abuse and neglect were unsubstantiated following DSS investigations; and that the one instance of neglect which had been substantiated was "technical" in nature and resulted only in a recommendation for counseling (which the parties and Melissa underwent). These findings, in turn, support the trial court's conclusion that no change in circumstances affecting Melissa's welfare had been shown. We therefore affirm the trial court's conclusion that no changed circumstances affecting the welfare of the child exist.

[1] Plaintiff alternatively contends the trial court erroneously modified the prior custody order without concluding changed circumstances existed. We agree. The law is clear that the trial court may not modify an existing custody order unless changed circumstances affecting the welfare of the child are shown. *Pulliam*, 348 N.C. at 619, 501 S.E.2d at 899. Having concluded no changed circumstances justifying modification of the prior custody order had been shown, the trial court was without authority to modify the terms of the prior custody order. Requiring Plaintiff to give Defendant final decision-making authority as to Melissa's schooling, extracurricular activities, and travel constituted modification of the prior custody order; accordingly, we reverse the portion of the trial court's order giving Defendant final decision-making authority in these areas. The terms of the prior custody order therefore remain in full force and effect.

II

[2] Plaintiff next contends the trial court erred in deviating from the Guidelines in modifying child support without making sufficient findings of fact. We agree.

The child support amounts provided in the Guidelines are presumptive. N.C.G.S. § 50-13.4(c1) (Supp. 1998). Deviation from the Guidelines upon a party's request is permissible, however, under proper circumstances, and will not be disturbed on appeal absent a clear abuse of discretion. *State ex rel. Fisher v. Lukinoff*, 131 N.C. App. 642, 644, 507 S.E.2d 591, 593 (1998). Deviation is essentially a four-step process. *See* N.C.G.S. § 50-13.4(c); Child Support Guidelines, 1999 Ann. R. N.C. 31-43. First, the trial court must determine the presumptive child support amount under the Guidelines. N.C.G.S. § 50-13.4(c). Second, the trial court must hear evidence as to "the reasonable needs of the child for support and the relative ability

of each parent to provide support." *Id.* Third, the trial court must determine, by the greater weight of this evidence, whether the presumptive support amount "would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate." *Id.*; Child Support Guidelines, 1999 Ann. R. N.C. 32 ("The Court may deviate from the Guidelines in cases where application would be inequitable to one of the parties or to the child(ren)."); *Brooker v. Brooker,* 133 N.C. App. 285, 290-91, 515 S.E.2d 234, —— (1999). Fourth, following its determination that deviation is warranted, in order to allow effective appellate review, the trial court must enter written findings of fact showing the presumptive child support amount under the Guidelines; the reasonable needs of the child; the relative ability of each party to provide support; and that application of the Guidelines would exceed or would not meet the reasonable needs of the child or would be "otherwise unjust or inappropriate." N.C.G.S. § 50-13.4(c); Child Support Guidelines, 1999 Ann. R. N.C. 32.

In this case, nowhere in its order does the trial court determine what the child support amount would be under the Guidelines. The trial court also failed to make findings as to Melissa's reasonable needs. Although the trial court appears to have determined deviation from the Guidelines is appropriate due to Defendant's disability, the trial court failed to make any finding that the greater weight of the evidence establishes that application of the presumptive Guidelines amount would be "unjust or inappropriate" on this ground. Accordingly, we must remand for entry of a new child support order. If the trial court determines that deviation from the Guidelines is warranted, it must make appropriate findings of fact therein.

III

**[3],[4]** Finally, Plaintiff contends the trial court misapplied the $421.00 disability check Defendant receives on behalf of Melissa. Again, we agree.

The Guidelines provide:

Payments received for the benefit of the child(ren) as a result of the disability of the obligor are not considered in determining the amount of the basic child support obligation.

Child Support Guidelines, 1999 Ann. R. N.C. 33. The Guidelines therefore prohibit the trial court from considering disability payments

SAIN v. SAIN

[134 N.C. App. 460 (1999)]

received on behalf of a child as income in determining the presumptive support amount. The Guidelines further provide:

> [T]he Court should compare the obligor's support obligation under the [G]uidelines with the benefits received by the child(ren) due to the obligor's disability, and determine whether an award of child support in addition to the child(ren)['s] disability-related benefits is warranted.

*Id.* The Guidelines contemplate that disability payments received for the benefit of the child are "received by" the child. Accordingly, the parent with primary custody is entitled to the disability payments received on behalf of the child. The receipt of these funds by the custodial parent may, however, support a deviation from the Guidelines' presumptive support amount to be paid by the non-custodial parent. Accordingly, the trial court, after making proper findings to support deviation, may reduce the obligor's child support obligation on the ground that the child is receiving funds as a result of the obligor's disability. *Cf. Guilford County ex rel. Easter v. Easter,* 344 N.C. 166, 473 S.E.2d 6 (1996) (holding third-party contributions may be used to support deviation from the Guidelines).

In this case, the trial court properly refused to consider the $421.00 disability check Defendant receives on Melissa's behalf as Defendant's income in figuring his support obligation. The trial court erred, however, in allowing Defendant to receive the $421.00 disability check for his own use. This money is earmarked for Melissa's benefit, and, on remand, the trial court should direct payment of the $421.00 disability check to Plaintiff, the custodial parent. In light of Plaintiff's receipt of this check, the trial court may determine deviation from the Guidelines is warranted and, with proper findings, may reduce Defendant's child support obligation.

We have thoroughly reviewed Plaintiff's remaining contentions, and find them unpersuasive.

Affirmed in part, reversed in part, and remanded.

Judges WYNN and MARTIN concur.