STATE OF NORTH CAROLINA, BY AND THROUGH THE ALBEMARLE CHILD SUPPORT ENFORCEMENT AGENCY, EX REL., BRENDA MILLER, PLAINTIFF V. IVORY HINTON, DEFENDANT

No. COA00-1316

(Filed 18 December 2001)

**Child Support, Custody, and Visitation— support—effective date of order**

> The trial court abused its discretion in a child support case by setting the effective date of its order as 1 May 2000 as opposed to January 1999, the first month after the filing of the complaint, and the case is remanded to the trial court for findings of fact concerning the propriety of an award of prospective child support from the date of the filing of the complaint.

Appeal by the State of North Carolina from order entered 5 June 2000 by Judge Edgar L. Barnes in Gates County Civil District IV-D Court. Heard in the Court of Appeals 6 November 2001.

*Attorney General Michael F. Easley, by Associate Attorney General Sonya M. Allen, for the State.*

*No brief for defendant appellee.*

McCULLOUGH, Judge.

On 11 April 2000, a hearing was held to establish paternity and child support for the minor child, Cordell Ballard Smith, Jr. Evidence

for the State showed that Brenda Miller and defendant, Ivory Hinton, went to junior high school together in Gates County, North Carolina. Ms. Miller saw defendant at a club in November 1985; around 21 November 1985, they engaged in sexual relations. Defendant and Ms. Miller had sexual relations at least two more times in November and December 1985.

On 8 September 1986, Ms. Miller gave birth to Cordell Ballard Smith, Jr. Ms. Miller wrote defendant a note approximately eight months after the child was born to inform defendant that he was the baby's father. Defendant and Ms. Miller later had a telephone conversation, during which defendant acknowledged that he was the father of Ms. Miller's son. However, the child's birth certificate, which was filed on 16 September 1986, listed Cordell Ballard Smith as the father. Ms. Miller initially believed Mr. Smith was the biological father of her child because she and Mr. Smith were engaged in a sexual relationship prior to and after Ms. Miller's relationship with defendant. Their relationship was suspended from January 1985 to January 1986 because Mr. Smith was in prison. During that time, Ms. Miller became involved with defendant.

The Gates County Child Support Enforcement Agency initiated an action for paternity and child support on behalf of Ms. Miller and her son. In March 1998, genetic testing confirmed that Mr. Smith was not the biological father of the child; as a result, no further action was taken against him. On 25 November 1998, Ms. Miller filed a complaint, alleging that defendant was the father of her child. Genetic tests performed in February 1999 showed a 99.62% probability that defendant was the biological father of Cordell Ballard Smith, Jr.

On 17 June 1999, a hearing was held to adjudicate paternity, establish child support, recover past public assistance, provide medical insurance for the child, initiate wage withholding and trade line reporting, and recover the costs of the action. When defendant failed to timely file an answer or other responsive pleading and did not appear to defend the action, the trial court entered a default order for paternity and child support against him. In the default order, defendant was adjudicated the natural biological father of the child and was ordered to pay child support in the amount of $324.00 per month, effective 1 July 1999. The default order was filed on 4 August 1999. However, the default order was set aside by stipulation of the parties on 13 January 2000 because there was legitimate confusion on the part of defendant regarding whether he was to appear in court on 17

June 1999. Evidence in the form of affidavits revealed that defendant received contradictory correspondence from the Gates County Child Support Office which reasonably led him to believe the 17 June 1999 hearing had been continued.

On 20 December 1999, defendant filed a "Notice to Deviate from Child Support Guidelines," requesting that the trial court deviate from the child support guidelines (Guidelines) and conduct an evidentiary hearing on the needs of the minor child and the ability of the parties to pay child support. At the hearing, Ms. Miller, defendant, and Gina Mizelle, an employee of the Albemarle Child Support Enforcement Agency, testified. Ms. Miller testified that defendant was the father of her child and had acknowledged him during his infancy, while defendant testified that he did not remember Ms. Miller and did not know the minor child. Defendant stated that he moved to New York in December 1986 and lived there for two years with his aunt. He also testified that he had never visited the minor child or given him gifts. Ms. Mizelle testified about the genetic test results and the calculation of child support.

After considering the evidence, the trial court found that defendant was the biological father of the minor child, Cordell Ballard Smith, Jr. The trial court also found that deviation from the Guidelines was warranted, and ordered defendant to pay $150.00 per month. The trial court further noted that defendant had paid $1,621.35 in child support before the 17 June 1999 order was set aside, and gave him a credit for that amount by ordering that the money be applied to the child support obligation established in its order. Defendant's child support obligation was ordered to commence effective 1 May 2000. The State appealed.

In its sole assignment of error, the State contends the trial court committed reversible error when it set the effective date of its order as 1 May 2000 as opposed to January 1999, the first month after the filing of the complaint. Specifically, the State argues the trial court failed to consider the weight of the evidence and failed to make adequate findings of fact to support its conclusions that a deviation from the Guidelines was proper and not award child support from the filing of the complaint. For the reasons set forth, we agree and reverse and remand the case for further findings of fact regarding the propriety of an award of prospective child support.

When considering the propriety of the trial court's deviation from the Guidelines, we employ an abuse of discretion standard. *Coble v.*

*Coble,* 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980). The trial court's "determination as to the proper amount of child support will not be disturbed on appeal absent a clear abuse of discretion, *i.e.* only if 'manifestly unsupported by reason.' " *State ex rel. Fisher v. Lukinoff,* 131 N.C. App. 642, 644, 507 S.E.2d 591, 593 (1998). "Thus, to determine whether the trial court abused its discretion in computation of a child support award deviating from the Guidelines, its findings of fact must show justification for the deviation and a basis for the amount ordered." *Fisher,* 131 N.C. App. at 644-45, 507 S.E.2d at 593; *see also Gowing v. Gowing,* 111 N.C. App. 613, 618-19, 432 S.E.2d 911, 914 (1993). Guidance is provided in *Sain v. Sain,* 134 N.C. App. 460, 517 S.E.2d 921 (1999), where deviation is described as a four-step process:

> First, the trial court must determine the presumptive child support amount under the Guidelines. N.C.G.S. § 50-13.4(c). Second, the trial court must hear evidence as to "the reasonable needs of the child for support and the relative ability of each parent to provide support." Third, the trial court must determine, by the greater weight of this evidence, whether the presumptive support amount "would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate." ("The Court may deviate from the Guidelines in cases where application would be inequitable to one of the parties or to the child(ren).")[.] Fourth, following its determination that deviation is warranted, in order to allow effective appellate review, the trial court must enter written findings of fact showing the presumptive child support amount under the Guidelines; the reasonable needs of the child; the relative ability of each party to provide support; and that application of the Guidelines would exceed or would not meet the reasonable needs of the child or would be "otherwise unjust or inappropriate."

*Id.* at 465-66, 517 S.E.2d at 926 (citations omitted).

In its order, the trial court made the following findings of fact:

> 9. Relator [Ms. Miller] is presently unemployed but has the capability of earning a monthly gross income of $893.00 per month.

> 10. The monthly financial needs for the maintenance and support of the minor child Cordell B. Smith Jr. are $250.00.

11. The total monthly needs of the relator and her other four children, excluding the monthly needs of relator's husband, are $637.68.

12. The relator receives $204.00 per month in food stamps.

13. The relator testified that her husband earned more than $1000.00 per month but that she did not know her husband's gross monthly income.

14. Defendant is employed at MCI World Com in Virginia and earns a gross monthly income of $1906.30.

15. The total monthly needs of the defendant, defendant's wife and infant child are $2000.00 per month.

16. Defendant is obligated by a Virginia Child Support Order to pay child support for another child not living in his home in the amount of $363.00.

17. After statutory and voluntary deductions are withheld from defendant's paycheck he has a total monthly net income of $894.00.

18. Defendant's rent for his family residence is $700.00 per month.

19. Defendant has a one year old infant child in his home. Defendant's wife is not currently employed as she stays at home to care for defendant's infant child.

20. Defendant incurs $73.00 per month in health insurance expense each month for the minor child Cordell B. Smith Jr.

21. Under the current applicable child support guidelines in effect in the State of North Carolina the recommended amount of support that defendant should pay as his share of support for Cordell B. Smith Jr. is $221.00 as shown by Worksheet A which was admitted into evidence as plaintiff's Exhibit 3.

22. Neither defendant nor relator have the means or ability to pay their share of the recommended child support as determined, under the child support guidelines, for the minor child Cordell B. Smith Jr.

23. On June 17, 1999 an Order adjudicating paternity and establishing child support was entered by the Honorable C.

Christopher Bean District Court Judge. Said Order required defendant via immediate income withholding to pay child support in the sum of $324.00 per month. On August 11, 1999 defendant filed a Motion under Rule 60 of the North Carolina Rules of Civil Procedure to set aside the June 17, 1999 Order. On January 8, 2000 Judge Bean entered an Order setting aside his June 17, 1999 Order adjudicating paternity and establishing child support. That during the time that Judge Bean's June 17, 1999 Child Support Order was in effect defendant paid, by income withholding, the sum of $1621.35 as child support for Cordell B. Smith Jr. Defendant requested a refund or credit of child support paid prior to the entry of this Order.

24. Plaintiff requested that the Court award child support effective January 1, 1999, the first month after the filing of the Complaint.

The trial court then concluded, as a matter of law:

3. That based on the gross income of the defendant and relator, the reasonable needs of the minor child, the reasonable needs of the relator and her four other minor children, the reasonable needs of the defendant, and upon consideration of the current financial circumstances of the defendant and relator, deviation from the recommended child support amount under the current child support guidelines is warranted and reasonable and the Court should deviate from the child support guidelines and establish child support in the sum of $150.00 per month.

4. That the defendant has available to him, through his employment medical insurance for the minor child Cordell B. Smith Jr.; it is reasonable for the defendant to maintain medical insurance on said child and therefore defendant should be required to maintain health insurance on the minor child as long as the same is available to him through his employment.

5. That the defendant should be entitled to a credit of $1621.35 for support payments made until Judge Bean's June 17, 1999 child support Order was set aside. That said credit should be applied to the child support obligation established in this Order.

6. That the defendant's child support obligation should commence effective May 1, 2000.

The findings of fact made by the trial court in the present case are similar in scope and vein to the findings of fact made by the trial court in *Fisher*. In *Fisher*, the trial court made several findings of fact which discussed the parties' income and debts, as well as the presumptive Guideline amount. *Fisher*, 131 N.C. App. at 643-44, 507 S.E.2d at 593. The trial court deviated from $505.00 per month, the Guideline amount, to $50.00, and declined to award child support from the time the complaint was filed to the date of the trial. *Id.* In reversing the trial court, the *Fisher* Court stated:

> [T]he court's findings lack the specificity necessary to justify its deviation from the presumptive Guidelines. While the trial court made findings relating to child care contributions, health insurance costs, and the relative ability of each party to pay, it failed to include any findings regarding [the child's] reasonable needs, including his education, maintenance, or accustomed standard of living . . . .

*Id.* at 646, 507 S.E.2d at 594. Although the parties in the present case do not dispute the amount of child support awarded, we nonetheless find *Fisher* instructive regarding the implied presumption that child support payments should begin at the time the complaint was filed. After careful examination of the record, we conclude that the trial court in the present case made the same error as the trial court in *Fisher*, in that the trial court provided no rationale as to why the child support award did not begin at the filing of the complaint. Unless the trial court finds that beginning the prospective child support payments on the date the complaint was filed would be "unjust or inappropriate" and there is evidence in the record to support this finding, it is error to order prospective support to begin at any other time. *See Sain*, 134 N.C. App. 460, 517 S.E.2d 921; and *Fisher*, 131 N.C. App. 642, 507 S.E.2d 591.

We thus agree with the State's argument that the trial court erred in failing to explain why it did not award child support from the filing of the complaint. Prospective child support includes the portion of the child support award representing "that period from the time a complaint seeking child support is filed to the date of trial." *Taylor v. Taylor*, 118 N.C. App. 356, 361, 455 S.E.2d 442, 446 (1995), *rev'd on other grounds*, 343 N.C. 50, 468 S.E.2d 33 (1996). N.C. Gen. Stat. § 50-13.4(c) applies to prospective child support and requires application of the Guidelines to arrive at an appropriate award. *Taylor*, 118 N.C. App. at 362, 455 S.E.2d at 446; *see also Shaw v. Cameron*, 125 N.C. App. 522, 527, 481 S.E.2d 365, 368 (1997).

We therefore remand to the trial court for findings of fact concerning the propriety of an award of prospective child support from the date of the filing of the complaint. *See* N.C. Gen. Stat. § 50-13.4(c); *Taylor*, 118 N.C. App. at 362-63, 455 S.E.2d at 446-47.

Reversed and remanded.

Judges GREENE and CAMPBELL concur.