IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-269

No. COA20-34

Filed 15 June 2021

Mecklenburg County, No. 13 CVD 16798

CATHERINE KINCHELOE (WILKINSON), Plaintiff,

v.

JOHN KINCHELOE, Defendant.

Appeal by plaintiff from order entered 10 July 2019 by Judge Aretha V. Blake in District Court, Mecklenburg County. Heard in the Court of Appeals 9 September 2020.

*Plumides, Romano, Johnson & Cacheris, P.C., by Richard B. Johnson, for plaintiff-appellant.*

*Myers Law Firm, PLLC, by Matthew R. Myers, for defendant-appellee.*

STROUD, Chief Judge.

¶ 1   Mother appeals an order modifying child support. Mother argues the trial court abused its discretion by excluding Father's bonus income from his gross income for purposes of calculation of child support and by double-counting support provided by her mother as both income and a reduction of her living expenses. Mother contends the trial court erred by deviating from the North Carolina Child Support Guidelines without making the required findings. In addition, Mother contends the trial court erred by determining Mother owed Father for overpayment of child

support and reimbursement of expenses not supported by the evidence. We conclude the trial court erred by failing to make sufficient findings to support deviation from the North Carolina Child Support Guidelines and by failing to make sufficient findings to allow appellate review of the child support amount and arrears established. We reverse and remand the trial court's order for entry of a new order with appropriate findings and conclusions of law.

## I.   Background

¶ 2         Mother and Father had two children during their marriage. In 2013, the parties separated. Mother filed a complaint with claims for child custody, child support, post-separation support, alimony, and equitable distribution. Father filed an answer and counterclaims for custody, child support, and equitable distribution. In December 2013, Mother and Father entered into a consent order resolving their claims of child custody, child support, and equitable distribution ("2013 Consent Order"). The 2013 Consent Order did not include detailed findings regarding the parties' incomes and calculation of child support but noted the parties had agreed upon the calculation based upon their incomes and the costs of medical and dental insurance provided by Father. The parties stipulated that the child support of $820.00 per month was "a compromise and shall not be deemed to be a deviation from the Guidelines." Father was ordered to pay the child support "bi-weekly by bank transfer." The 2013 Consent Order also provided for Father to maintain medical and

dental insurance for the children; to pay 60% of any uninsured expenses; and to pay 60% of "the costs of all agreed-upon extracurricular activities." The 2013 Consent Order also noted that the parties would enter into a separate agreement regarding post-separation support and alimony and Mother would dismiss these claims.

¶ 3        On 23 May 2017, Mother filed a motion to modify child custody, to increase child support, and to appoint a parenting coordinator. Mother alleged the existing child support order was over three years old and she believed child support would increase by more than 15% based upon "the parties' incomes and child-related expenses." Father filed a response, alleging upon information and belief that the child support amount should be decreased. The parties agreed to a temporary consent order modifying child custody and appointing a parenting coordinator. Father filed a motion to deviate from the child support guidelines, alleging that guideline child support "may exceed the reasonable needs of the children or would otherwise be unjust or inappropriate." Mother filed a motion for wage garnishment and to determine child support arrears and attorney's fees. She alleged Father had failed to pay the full amount of his child support in various months when he deducted "what he believes, [Mother] owes him for various medical and extracurricular expenses."

¶ 4        There were multiple hearings on the various motions before the trial court. The trial court heard the motions of both parties regarding child support, wage garnishment, determination of arrears, and deviation from the Child Support

Guidelines on 26 June and 14 September 2018. The trial court entered its order addressing these motions on 10 July 2019 ("2019 Order"). The 2019 Order reduced Father's monthly child support to $471.36 per month as of 1 October 2018 and also required him to pay 2% of his annual bonus within 30 days of receipt. The order determined Mother owed Father $5,313.44 for overpayment of child support and unreimbursed expenses. The order also changed the allocation of the uninsured medical expenses and "agreed-upon extra-curricular activities" to 66% paid by Father and 34% paid by Mother. Mother timely appealed.

## II.  North Carolina Child Support Guidelines

¶ 5        Mother argues many of the trial court's findings are not supported by the evidence and that the trial court failed to make the findings necessary to support its decision to deviate from the Child Support Guidelines and findings adequate to permit review of the trial court's calculation of child support.

### A. Standard of Review

¶ 6        This Court's standard of review of an order establishing child support based upon a deviation from the child support guidelines is well established:

> A trial court's deviation from the Guidelines is reviewed under an abuse of discretion standard.
>        Nevertheless, in deviating from the Guidelines, a trial court must follow a four-step process:
>        First, the trial court must determine the presumptive child support amount under the Guidelines. Second, the trial court must hear

evidence as to the reasonable needs of the child for support and the relative ability of each parent to provide support. Third, the trial court must determine, by the greater weight of this evidence, whether the presumptive support amount would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate. Fourth, following its determination that deviation is warranted, in order to allow effective appellate review, the trial court must enter written findings of fact showing the presumptive child support amount under the Guidelines; the reasonable needs of the child; the relative ability of each party to provide support; and that application of the Guidelines would exceed or would not meet the reasonable needs of the child or would be otherwise unjust or inappropriate.

*Spicer v. Spicer*, 168 N.C. App. 283, 292, 607 S.E.2d 678, 685 (2005) (citation omitted)

(quoting *Sain v. Sain*, 134 N.C. App. 460, 465-66, 517S.E.2d 921, 926 (1999)).

## B. Deviation

¶ 7        The findings of fact and conclusions of law required in an order setting child

support based upon the reasonable needs of the child and relative abilities of the

parents to pay support are more detailed than those required for an order based upon

the Child Support Guidelines:

> "If the trial court imposes the presumptive amount
> of child support under the Guidelines, it is not . . . required
> to take any evidence, make any findings of fact, or enter

any conclusions of law 'relating to the reasonable needs of the child for support and the relative ability of each parent to [pay or] provide support.'" "However, upon a party's request that the trial court deviate from the Guidelines . . . or the court's decision on its own initiative to deviate from the presumptive amounts . . . [,] the court must hear evidence and find facts related to the reasonable needs of the child for support and the parent's ability to pay." In other words, "evidence of, and findings of fact on, the parties' income, estates, and present reasonable expenses are necessary to determine their relative abilities to pay." In the course of making the required findings, "the trial court must consider 'the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.'" "These 'factors should be included in the findings if the trial court is requested to deviate from the [G]uidelines.'" As a result, given that Defendant requested the trial court to deviate from the child support guidelines, the trial court was required to "hear evidence and find facts related to the reasonable needs of the child for support and the parent's ability to pay."

*Ferguson v. Ferguson*, 238 N.C. App. 257, 260-61, 768 S.E.2d 30, 33-34 (2014)

(alterations in original) (citations omitted).

¶ 8        Mother argues, "the trial court abused its discretion by deviating from the

North Carolina Child Support Guidelines by reducing [Father's] payment from his

annual bonus from 5.1% to 2%."[1] (Original in all caps.)  Although the trial court has

---

[1] The trial court found Guideline Child support based upon Father's *base* monthly income of $9,216.00 would be $471.364.  The trial court found "[i]f Father were to pay 5.1% of his 2017

substantial discretion in setting the amount of child support, if the child support is based upon a deviation from the child support guidelines, the trial court must follow the "four-step process" for this determination. *Spicer*, 168 N.C. App. at 292, 607 S.E.2d at 685. The findings of fact must be sufficient to allow appellate review of the calculation. *Id.*

> Our Supreme Court has explained that "an order for child support must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to 'meet the reasonable needs of the child' and (2) the relative ability of the parties to provide that amount." These conclusions must in turn be based on factual findings "specific enough to indicate to the appellate court that the judge below took due regard of the particular estates, earnings, conditions, [and] accustomed standard of living of both the child and the parents." Without sufficient findings, an appellate court has no means of determining whether the order is adequately supported by competent evidence. The Court stressed that "[i]t is not enough that there may be evidence in the record sufficient to support findings which could have been made. The trial court must itself determine what pertinent facts are actually established by the evidence before it . . . ."

*Id.* at 293, 607 S.E.2d at 685 (alterations in original) (citations omitted) (quoting *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980)).

Here, the 2019 Order addresses only part of the first step of the four-step

---

bonus to Mother, the amount would have been $9,690.00." The trial court determined that 5.1% of Father's bonus "would exceed the reasonable needs of the children" and ordered that he pay 2% of his bonus.

process described in the Child Support Guidelines. The trial court did not follow the statutory procedure for establishing child support set forth in North Carolina General Statute § 50-13.4.

> The court shall determine the amount of child support payments by applying the presumptive guidelines established pursuant to subsection (c1) of this section. However, upon request of any party, the Court shall hear evidence, and from the evidence, find the facts relating to the reasonable needs of the child for support and the relative ability of each parent to provide support. If, after considering the evidence, the Court finds by the greater weight of the evidence that the application of the guidelines would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate the Court may vary from the guidelines. If the court orders an amount other than the amount determined by application of the presumptive guidelines, the court shall make findings of fact as to the criteria that justify varying from the guidelines and the basis for the amount ordered.

N.C. Gen. Stat. § 50-13.4(c) (2019).

¶ 10   North Carolina General Statute § 50-13.4 sets forth two methods of determining child support. The first and presumptive method is the Child Support Guidelines. N.C. Gen. Stat. § 50-13.4(c). There is a presumption that child support will be established under the Child Support Guidelines in cases where the parties' incomes fall within the range addressed by the Guidelines. N.C. Child Support Guidelines, AOC-A-162, at 1 (2019) ("North Carolina's child support guidelines apply

as a rebuttable presumption in all legal proceedings involving the child support obligation of a parent . . . ."). The Guidelines define "gross income" and if the parties' joint gross incomes fall above the Guidelines, the Guidelines do not apply. *Id.* at 2 ("In cases in which the parents' combined adjusted gross income is more than $30,000 per month ($360,000 per year), the supporting parent's basic child support obligation cannot be determined by using the child support schedule.").

> If the trial court imposes the presumptive amount of child support under the Guidelines, it is not . . . required to take any evidence, make any findings of fact, or enter any conclusions of law "relating to the reasonable needs of the child for support and the relative ability of each parent to [pay or] provide support.

*Biggs v. Greer,* 136 N.C. App. 294, 297, 524 S.E.2d 577, 581 (2000) (alterations in original) (quoting *Browne v. Browne,* 101 N.C. App. 617, 624, 400 S.E.2d 736, 740 (1991)).

¶ 11 The trial court must use the second method to calculate child support when the Guidelines do not apply because the parties' incomes fall above the Guidelines or when the trial court determines deviation from the Guidelines is necessary because "after considering the evidence, the Court finds by the greater weight of the evidence that the application of the guidelines would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate . . . . N.C. Gen. Stat. § 50-13.4 (c). In this

instance, the trial court "must hear evidence and find facts related to the reasonable needs of the child for support and the parent's ability to pay[.]" *Biggs v. Greer*, 136 N.C. App. at 297, 524 S.E.2d at 581 ("However, upon a party's request that the trial court deviate from the Guidelines, G.S. § 50–13.4(c), or the court's decision on its own initiative to deviate from the presumptive amounts, the court must hear evidence and find facts related to the reasonable needs of the child for support and the parent's ability to pay, G.S. § 50–13.4(c)." (citation omitted)).

¶ 12        The North Carolina Child Support Guidelines define income as "a parent's actual gross income from any source, including but not limited to income from employment or self-employment (salaries, wages, commissions, *bonuses*, dividends, severance pay, etc.)[.]" N.C. Child Support Guidelines at 3 (emphasis added). For non-recurring income, "the court may average or prorate the income over a specified period of time or require an obligor to pay as child support a percentage of his or her non-recurring income *that is equivalent to the percentage of his or her recurring income paid for child support.*" *Id.* (emphasis added).

> The court upon its own motion or upon motion of a party may deviate from the guidelines if, after hearing evidence and making findings regarding the reasonable needs of the child for support and the relative ability of each parent to provide support, it finds by the greater weight of the evidence that application of the guidelines would not meet, or would exceed, the reasonable needs of the child considering the relative ability of each parent to provide support, or would otherwise be unjust or inappropriate. *If*

> *the court deviates from the guidelines, the court must make written findings (1) stating the amount of the supporting parent's presumptive child support obligation determined pursuant to these guidelines, (2) determining the reasonable needs of the child and the relative ability of each parent to provide support, (3) supporting the court's conclusion that the presumptive amount of child support determined under the guidelines is inadequate or excessive or that application of the guidelines is otherwise unjust or inappropriate, and (4) stating the basis on which the court determined the amount of child support ordered.*

*Id.* (emphasis added).

¶ 13    The trial court found Father's "gross monthly income" was "$9,216" or $110,592.00 per year, but this amount was only his base income. Father regularly received substantial bonuses which sometimes exceeded his base income. Father's evidence showed his bonus in 2013 was $71,550.91; in 2014 it was $95,930.00; in 2015 it was $127,543.55; in 2016 it was $123,932.89, and in 2017 it was $190,000.00. Mother's gross monthly income from her job was $3,713.00. The trial court also found Mother's gross monthly income should be increased by $1,041.77 because "Mother lives with her mother and does not pay rent or utilities." This brings mother's total annual income to $57,057.24.

¶ 14    Here, the trial court used a hybrid of a Guideline child support calculation and a deviation from the Guidelines, while making only minimal findings as would be appropriate in a Guideline child support determination but not sufficient to allow appellate review of an order deviating from the Guidelines. Specifically, the trial

court applied the Guidelines to Father's base income only, excluding his bonuses from the gross income calculation and calculating Guideline support using only his base income, and then deviated from the Guidelines only as to Father's income from his bonuses. While the trial court found that Father's yearly bonus was non-recurring income, bonuses are included in the definition of income:

> First, we note that the plain language of the Guidelines clearly includes bonus income in the definition of "income." Should certain bonus or other income be deemed irregular or nonrecurring, *the Guidelines further instruct the trial court to average or pro-rate the income or order the obligor to pay a percentage of his or her non-recurring income equivalent to the percentage of his or her recurring income for child support. There is no provision in the Guidelines that instructs the trial court to completely separate irregular or non-recurring bonus income from its calculations.* Second, we can infer that the trial court found that the bonus income was not irregular or non-recurring given that the order specifically stated each party had received and could expect an annual bonus. After reviewing the record, we agree that the bonus income did not constitute irregular or non-recurring income as contemplated by the Guidelines. *Finally, there is no provision in the Guidelines which instructs the trial court that it may elect to opt out of including bonus income in its calculations based solely on the premise that the reasonable needs and expenses of the children are otherwise satisfied without its inclusion.* Because the Guidelines include bonus income in the definition of income, and because the bonus income was not irregular or nonrecurring, the trial court was required to include the bonus income in calculating the parties' base income and the overall child support award. Its failure to do so constituted an abuse of discretion.

*Hinshaw v. Kuntz*, 234 N.C. App. 502, 506-07, 760 S.E.2d 296, 300 (2014).

¶ 15 The first step of the four-step process was to "determine the presumptive child support amount under the Guidelines." *Spicer*, 168 N.C. App. at 292, 607 S.E.2d at 685. The trial court made some findings relevant to this first step but did not complete the first step. To complete the first step, the trial court must first make findings of Father's gross income as defined by the Guidelines. Since Father's bonus income varied over the years, the trial court may consider an average based upon Father's income history or it may determine the entire gross income, including bonus income, in some other manner, but the findings of fact must address this issue. There is evidence in the record to support this type of finding, but only the trial court may make that determination. *See Hinshaw v. Kuntz*, 234 N.C. App. at 506-07, 760 S.E.2d at 300. Once the trial court has determined Father's and Mother's gross incomes, it must calculate "the presumptive child support amount under the Guidelines." *Spicer*, 168 N.C. App. at 292, 607 S.E.2d at 685. Since the trial court's finding as to Father's gross income did not include his bonuses, the trial court could not calculate "the "presumptive child support amount under the Guidelines," *id.*, and we cannot review the trial court's determination to deviate from the Guidelines.

¶ 16 As to the second step, the trial court did "hear evidence as to the reasonable needs of the child for support and the relative ability of each parent to provide support." *Id.* But the trial court did not make sufficient findings regarding the

reasonable needs of the child for support for this Court to be able to review this portion of the order. The findings state only that "[t]he listed expenses for the children are reasonable." Although both parties presented evidence regarding the children's expenses and which expenses they paid, the trial court did not explain which expenses it considered as reasonable or make any findings as to which party paid which expenses. In addition, the parties' expenditures for the "agreed-upon extracurricular activities" for the children was a major factual issue but the order fails to resolve this issue. The parties clearly did not agree on all of the "agreed-upon" expenses.[2]

¶ 17     As to the third and fourth steps, the trial court determined the presumptive support amount "would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate." *Id.* But the trial court did not make the findings required by the fourth step:

> Fourth, following its determination that deviation is

---

[2] The issues regarding custody and appointment of a parenting coordinator are not presented on appeal, but some of these issues are related to child support. Part of the dispute regarding custody and the need for a parenting coordinator was based upon the parties' pattern of disagreements as to which sports and other activities the children should participate in and which parent should bear the cost of these expenses. Mother contended that based on the substantial income disparity between the parents, Father should not be allowed to have the children participate in certain events and then seek reimbursement from her. In addition, the parties agreed at times to certain activities, such as golf, and then later disagreed as to payment for particular golf-related events. Both children were involved in a wide variety of sports and other extracurricular activities.

> warranted, in order to allow effective appellate review, the
> trial court must enter written findings of fact showing the
> presumptive child support amount under the Guidelines;
> the reasonable needs of the child; the relative ability of
> each party to provide support; and that application of the
> Guidelines would exceed or would not meet the reasonable
> needs of the child or would be otherwise unjust or
> inappropriate.

*Id.* Without adequate findings as to the reasonable needs of the children or the
presumptive child support as calculated based on the correct gross income of Father,
we cannot discern why the trial court deviated from the Guidelines. We also note
that Guideline child support normally does not take into account the vast array of
extracurricular expenses involved in this case, which included soccer, baseball, golf,
Boy Scouts, lacrosse, skiing, etiquette classes, tennis, and various summer camps.
These types of expenses can also be considered as "extraordinary expenses" under the
child support Guidelines. *See Biggs*, 136 N.C. App. at 298, 524 S.E.2d at 581-82
("'[D]etermination of what constitutes an extraordinary expense is . . . within the
discretion of the trial court[.]' Based upon the Guideline language above, 'the court
may, in its discretion, make adjustments [in the Guideline amounts] for
extraordinary expenses.' However, incorporation of such adjustments into a child
support award does *not* constitute deviation from the Guidelines, but rather is
deemed a discretionary adjustment to the presumptive amounts set forth in the
Guidelines. In short, absent a party's request for deviation, the trial court is not

required to set forth findings of fact related to the child's needs and the non-custodial parent's ability to pay extraordinary expenses." (first, second, and fourth alterations in original) (citations omitted)). However, in this case, the trial court did not treat the extra-curricular expenses as "extraordinary expenses" for purposes of calculating Guideline child support under the first step of the analysis for deviation from the Guidelines, nor did the trial court consider the extraordinary expenses as part of the "reasonable needs" of the children based upon North Carolina General Statute § 50-13.4(c). Whether child support is calculated based upon the reasonable needs of the children and ability of the parties to provide support or upon the Guidelines, these expenses should be addressed by the trial court.

¶ 18        The trial court is required to make detailed "findings of fact as to the criteria that justify varying from the guidelines and the basis for the amount ordered." N.C. Gen. Stat § 50-13.4(c); *see Beamer v. Beamer*, 169 N.C. App. 594, 599, 610 S.E.2d 220, 224 (2005) ("[O]ur Supreme Court has stressed that '[i]t is not enough that there may be evidence in the record sufficient to support findings which *could have been made*. The trial court must itself determine what pertinent facts are actually established by the evidence before it . . . .' Because the trial court failed to include the necessary findings of fact regarding the children's reasonable needs, this Court must reverse and remand for further proceedings. *See also* 2 Suzanne Reynolds, Lee's North Carolina Family Law § 10.15 (5th ed. 1999) ('If the trial court fails to make findings

regarding the child's reasonable needs, it cannot determine whether the application of the [G]uidelines would not meet the reasonable needs of the child, and deviation is improper.')." (second and third alterations in original) (citations omitted)). The trial court has discretion in making the child support calculation, but the trial court does not have the discretion to establish child support by a method other than that established by North Carolina General Statute § 50-13.4, and it must make findings sufficient to allow appellate review of the child support calculation. We must therefore reverse the 2019 Order and remand for additional proceedings.

## C. Mother's Income

Mother argues, "the trial court abused its discretion when it added $1,041.77 per Month to [Mother's] monthly income and then deviated from the North Car[o]lina Child Support Guidelines."

Although we have already determined we must reverse the 2019 Order, we will also address Mother's argument regarding the trial court's findings regarding her income as the trial court must also make findings regarding Mother's income to calculate child support on remand.

Here, as to Mother's income and expense, the trial court found,

> 12. Mother lives with her mother and does not pay rent or utilities. Her gross monthly income should be increased by $1,041.77 because the payment of these expenses by her mother substantially reduces her living expenses.

. . . .

> 26. Mother's income, her paying few living expenses, and her receiving monthly child support of $471.36 plus 2% of Father's bonus, allows her to meet her share of the needs of the children.

The North Carolina Child Support Guidelines include "maintenance received from persons other than the parties to the instant action" as income, and the value of housing falls within this definition. *Spicer*, 168 N.C. App. at 289, 607 S.E.2d at 683 ("We therefore hold that the trial court did not err in including the $300.00 per month value of Mr. Spicer's housing as income.").

The trial court did not err by treating housing and utilities provided by Mother's mother as part of Mother's income and increasing Mother's income by $1,041.77. But because the trial court failed to make sufficient findings regarding Mother's expenses, we are unable to determine to what extent Mother's "few living expenses" resulted in the deviation from the child support Guidelines. Mother argues the trial court both added the housing and utilities provided by her mother to her income and then used her "reduced shared expenses (not paying rent and utilities) as a reason to deviate from the North Carolina Child Support Guidelines," resulting in a "double-dip" to Mother's detriment. Mother's argument is plausible, but the trial court's findings of fact are too minimal for us to determine if the trial court double-

counted these numbers.[3]   Since we are unable to determine whether the trial court counted the value of Mother's "living expenses" twice, and we are reversing based on insufficient findings for deviation, we reverse the entire child support calculation and remand for a new order.

**D. Determination of Arrears**

¶ 23        Because we are reversing the child support order, we must also reverse the order as to the calculation of arrears.   Since the trial court based the arrears determination upon the child support obligation, at least in part, the entire arrears amount must be recalculated.   However, Mother also argues that the trial court failed to make sufficient findings to allow appellate review of the arrears calculation. Specifically, the 2013 Consent Order required Mother and Father to pay portions of uninsured medical expenses and agreed-upon extracurricular expenses.   Father also paid Mother alimony until August 2016.   Thus, the sums Father was obligated to pay to Mother included monthly child support; alimony; 60% of unreimbursed medical expenses; and 60% of "agreed-upon" extracurricular expenses. The period of time addressed by the motion regarding arrears covered from December 2013 to September 2018.   In any month in which Father failed to pay the full amount of child

---

[3] Mother also challenged many of the trial court's findings of fact as unsupported by the evidence.   We have not addressed each of these challenges since we have determined the findings did not address the factors as required by North Carolina General Statute § 50-13.4(c) and the Child Support Guidelines and are not sufficient to allow appellate review.

support, alimony, or other reimbursement sums owed, he would owe Mother arrears for that month. In any month he overpaid his obligations, Mother would owe this overpayment back to Father. Father also contended Mother owed him for 40% of unreimbursed medical expenses he had paid and 40% of agreed-upon extracurricular expenses he had paid.[4] To the extent Mother failed to reimburse Father for these expenses, she would owe him arrears. The trial court may offset these amounts owed, assuming Father underpaid his child support and other obligations and Mother also underpaid her obligations.

¶ 24        Mother presented voluminous financial evidence including detailed evidence of the amounts Father paid in each month in question and the expenditures for which each party sought reimbursement, but the trial court did not make findings as to these sums. Instead, the trial court found "[t]here is insufficient evidence to support Mother's claims. Based upon the competent evidence presented, any reduced payments to Mother for child support were reduced for Mother's share of expenses Father paid for the children. Father does not owe Mother any arrears." Father did not present evidence refuting the amounts of the payments Mother contended he had

---

[4] Mother and Father had substantial disputes regarding the children's extracurricular activities, so the trial court must also determine which expenses were actually "agreed upon" as extracurricular expenses covered by the 2013 Consent Order. If either party sought reimbursement for extracurricular expenses not covered by the 2013 Consent Order, those expenses should not be included in the arrears calculation.

made but argues on appeal that Mother focuses on the "quantity of evidence she presented," but "the quality of evidence is what is important." We agree quality is more important than quantity, but without findings of fact addressing the factual issues raised, we cannot perform proper appellate review of the order.

¶ 25        Making matters more complicated, Father sometimes paid by bank transfer—the method dictated by the 2013 Consent Order—but sometimes paid by check or Venmo. According to Mother, she sometimes paid extracurricular expenses at Father's behest directly and sometimes Father reduced his payment to Mother. Father did not present evidence explaining the reduced payments of child support as listed by Mother but simply testified that "every deduction has always been for some expense for the children." He testified "it would take incredible forensics to go back in 2014 for the emails and bank accounts and everything else at this point so I'm a little caught off guard." Father argues that some of Mother's testimony and evidence regarding payments and expenses was "confusing and not complete."

¶ 26        The trial court's findings do not explain how the trial court calculated the precise number of $5,313.44 owed by Mother to Father. Although the trial court determines the credibility and weight of the evidence, here the findings are simply not adequate to allow appellate review of the issues presented and calculation of arrears. On remand, the trial court must make findings resolving the many factual disputes, including which extra-curricular expenses were "agreed upon" and thus

covered by the 2013 Consent Order, and make findings adequate for appellate review of the order as to any arrears owed by either party.

## III. Conclusion

For the foregoing reasons, the trial court's order is reversed and remanded for entry of a new order which complies with North Carolina General Statute § 50-13.4. If either party requests additional hearing after remand, the trial court shall receive additional evidence prior to entry of a new order. If neither party requests additional hearing, the trial court may enter a new order based solely upon the existing record.

REVERSED AND REMANDED.

Judges MURPHY and COLLINS concur.